THE STATE OF KANSAS, *ex rel. Attorney General*, v. JOHN P. ST. JOHN, *Governor of the State of Kansas*.

1. COUNTY LINES *to Include not less than 432 Square Miles*.   Under section 1, article 9, of the state constitution, no county, whether organized or unorganized, can have its lines changed by the legislature so as to include an area of less than four hundred and thirty-two square miles.

2. STAFFORD COUNTY; *Act Reducing its Area to 72 Square Miles, Unconstitutional.*   The attempt by the legislature, under an act entitled "An act defining the boundaries of Barton and Pratt counties," approved March 5, 1875, to reduce the area of Stafford county from seven hundred and ninety-two square miles to seventy-two square miles, and divide such detached territory between Barton and Pratt counties, is void, because in conflict with section 1, article 9, of the state constitution.

*Original Proceedings in Mandámus.*

ON the 4th of February, 1879, an alternative writ of mandamus was issued out of this court, and directed to John P.

St. John, governor of the state, commanding and requiring him, the governor aforesaid, to appoint some competent person, who is a *bona fide* inhabitant of the county of Stafford, to take the census of said county, and ascertain the number of *bona fide* inhabitants of said county, in order that said county might be organized as suggested and prayed for in the petition and asked by the signers to the memorial, as hereinbefore stated in this writ, or that he should appear before the judges of the supreme court, sitting within and for the state of Kansas, at Topeka, the capital of said state, in the county of Shawnee, in said state, on 7th day of February, 1879, at 10 o'clock, A. M. of said day, to show cause, if any he had, why he refused so to do.

To this writ the Governor, through his attorney, filed the answer following, to wit:

"The governor of the state of Kansas, for his answer to the alternative writ of mandamus heretofore issued by said court against him, on application of the attorney general of the state of Kansas, says that no peremptory writ of mandamus ought to be allowed, for the reasons —

"*First*, Because said court has no jurisdiction over the person of the defendant, in his official capacity as governor of the state of Kansas, for the purpose of such writ; and

"*Second*, Because by an act of the legislature of the state of Kansas, entitled 'An act defining the boundaries of Barton and Pratt counties,' approved March 5, 1875, the area of the unorganized county of Stafford was reduced to less than four hundred and thirty-two square miles.

"Wherefore, defendant asks to be hence dismissed with his costs.                              "H. B. JOHNSON,
                         "*Attorney for the Defendant.*"

March 31, 1879, the case was duly submitted on the briefs of the parties hereto, and the opinion herein was filed on the 25th of April, 1879.

*Willard Davis*, attorney general, and *Elliott & Jetmore* and *J. H. Smith*, for The State.

Stafford county was originally created and defined in 1868 (Gen. Stat. 1868, ch. 24, § 73), and was redefined in 1874

(Laws 1874, p. 92), in which condition it remained till 1875, when the legislature, by an act entitled "An act defining the boundaries of Barton and Pratt counties," approved March 5th, 1875, attempted to take from Stafford and give to Barton county, townships 21–23 of ranges 11–14, and to Pratt county, townships 24 and 25 in said ranges, leaving townships 24 and 25, of range 15, constituting Stafford county — an area of 72 square miles. (Laws 1875, ch. 61, p. 88.)    At the time of said act, Barton contained an area of 900 square miles, Pratt 720, and Stafford 792.    Under said act Barton would contain 1,332 square miles, Pratt 1,008, and Stafford 72. We submit the said act of 1875 is void, and ought not to be an impediment to the organization of Stafford county, for reasons following:

It is in conflict with § 1, art. 9, of the constitution, in that said act changes the lines of the county of Stafford so as to include in said county an area of less than 432 square miles.

The framers of the constitution specifically invested the legislature with the whole power of organizing new counties, (12 Kas. 426,) subject to certain limitations therein imposed, viz.: First, no county shall be organized (created) with an area of less than four hundred and thirty-two square miles; second, nor shall the lines of *any* county be changed so as to include an area of less than four hundred and thirty-two square miles.

The object of these limitations was to preserve the territorial integrity of counties — to prevent the creation of new counties, and the territorial reduction of established counties below an area of less than the constitutional requirement. They were taken from the constitution of Iowa, (Kansas Constitutional Debates, pp. 136–138; Iowa Constitution, art. 11, § 2,) to which we may look for a correct interpretation. The Iowa constitution is: "No new county shall be hereafter created containing less than four hundred and thirty-two square miles; nor shall the territory of any organized county be reduced below that area." From which it may be

38 — 21 KAS.

seen that the word "organized" as used in the first of the above limitations is not to be interpreted in a limited sense, but means *created* or *established*. The framers of the constitution so understood it. Mr. Burris, a member of the convention, who introduced said limitations by way of an amendment (and which was adopted), in opposition to an amendment offered by Mr. Preston to said section, used the following language: "The design of this [amendment] seems to be to strike out that part of the section which prohibits the legislature from creating a new county with less than four hundred and thirty-two square miles, or from reducing any county below that." (Kas. Const. Debates, 419.)

But the supreme court of Iowa, in the case of *Duncombe v. Prindle*, 12 Iowa, 1, in construing the constitution, held that it prohibited the legislature from reducing the area of the county of Humboldt (an unorganized county of Iowa) below four hundred and thirty-two square miles, or to form a new county with a less area. In the case of *Garfield v. Brayton*, 33 Iowa, 16, the court held that the creation of Crocker county, with an area of less than four hundred and thirty-two square miles, even into unorganized territory, is an infraction of the constitution. *Att'y Gen'l v. Fitzpatrick*, 2 Wis., 548; *Iowa County v. Green County*, 1 Pin. (Wis.) 518.

The language of the constitution is broad enough, and does cover all counties, both organized and unorganized. It is, the legislature shall not "organize any county, or change the lines of any county," etc.

The legislature in 1868 divided the territory of the state into counties, giving them names and boundaries (Gen. Stat. 1868, ch. 24) as contemplated by the constitution, since which time these subdivisions have been designated and known by the legislature, the courts, the bar, and the people, as "counties." The said act of 1875 refers to "Pratt county," though at that time unorganized. The constitution is plain and unambiguous, and the framers must be understood to mean what they have plainly expressed, and consequently no room is left for construction. (*McCluskey v. Cromwell*, 11 N. Y. 593.)

Possible or even probable meanings, when one is plainly declared in the constitution itself, the courts are not at liberty to search for elsewhere. (*People v. Purdy*, 2 Hill, 35.)

If the above clause can be so construed that it shall not extend alike to all counties, whether organized or unorganized, it may then, we think, be set down as an established fact that the English language is too poor for the framing of fundamental laws which shall limit the legislative branch of the government. (Cooley's Const. Limit. 55, 57, and authorities cited; Pott. & Dwar. on Stat. and Const. 126; *Jackson v. Lewis*, 17 Johns. 477; 9 Barb. 170; 13 N. Y. 80; *U. S. v. Fisher*, 2 Cranch, 538; 15 Kas. 500.)

Subject to the above limitations, the legislature possesses plenary power over the counties, and not being prohibited, could have abolished Stafford county, though organized. (*Division of Howard Co.*, 15 Kas. 194.)   But said county has *not* been abolished, but is still *in esse*, and is attached to Barton county for judicial purposes. (Laws 1873, p. 165.) Besides, said act of 1875 does *not*, nor does it purport to, abolish Stafford county.

After dividing the state into counties, designating their names and defining their boundaries, (Gen. Stat. 1868, ch. 24,) the legislature by statute delegated to the governor, as its agent, the duty, on presentation of a proper memorial duly verified, of taking the preliminary steps in organizing counties. (Laws 1876, ch. 63, § 1.)   This duty is ministerial and imperative. (*State, ex rel., v. Comm'rs of Pawnee Co.*, 12 Kas. 426; *State, ex rel., v. Comm'rs of Ford Co.*, 12 Kas. 441.)

The said law of 1876 provides, that "when there shall be presented to the governor a memorial signed . . . by householders . . . of any unorganized county, it shall be the duty of the governor to appoint some competent person to take the census," etc.   Although by said act of 1875 the area of Stafford county is reduced to seventy-two square miles, yet the governor, on presentation of a proper memorial, would be bound, in the absence of fraud or mistake, to aid in organizing said county.   The governor has nothing to do with the

territorial *status* of a county. The creating and defining the counties by the legislature are part of their organization, and must not conflict with the constitution. A part being void, the whole is void. (*Duncombe v. Prindle*, 12 Iowa, 1; *Garfield v. Brayton*, 33 Iowa, 16; *Att'y Gen'l v. Fitzpatrick*, 2 Wis. 548.)

*H. B. Johnson*, for defendant:

The constitution (art. 9, § 1) provides that no county shall be organized nor the lines of any county changed, so as to include an area of less than 432 square miles, but this provision has no application to unorganized counties, over which the legislature has full control. (*State v. Pawnee Co.*, 12 Kas. 438; *Division of Howard Co.*, 15 Kas. 194; *Laramie Co. v. Albany Co.*, 2 Otto, 307.)

The unmistakable purpose of the convention which framed the constitution, was to require all organized counties to have 432 square miles, which would make the smallest counties eighteen by twenty-four miles square. The division of the unorganized territory of the state into counties was not thought of. Mr. Burris, who was the author of this provision, said: "I think there would be no necessity in any part of the territory to organize a county of less area than 432 square miles." (Kas. Const. Deb. 136.) Again, he says: "It seems to me that it is now extending to the legislature all the power that is proper to protect the rights and interests of the people. It is saying that they shall provide for the location of county seats, *organization of new counties* and changing of county lines, but restricts them so that they shall not change county seats unless a majority of the people are in favor of it; and that there shall be no new county of a less area than 432 square miles. (Id. 138.) Again, while opposing a motion to strike out the clause in question, he says: "The design of this seems to be to strike out that part of the section which prohibits the legislature from *creating a new county* with less than 432 square miles, or from *reducing any county* below that." (Id. 419.) The terms " creating a new county "

and the "organization of new counties" are used synony-
mously and interchangeably, and undoubtedly refer to the
permanent organization of a county.

The division of the unorganized territory of the state into
unorganized counties, certainly would not be *organizing* such
counties within the meaning of the constitution, and there-
fore such unorganized counties might have less than 432
square miles, but before they could be organized and entitled
to the rights and powers of permanently-organized counties,
the legislature would have to provide them sufficient territory
to give them this area. And in speaking of the organiza-
tion of counties, and the changing of the lines of counties, it
is clear that the same kind of counties was intended, viz.,
organized counties. The constitution of the state of Iowa is
distinguishable from ours. It provides that "no new county
shall be hereafter created, containing less than four hundred
and thirty-two square miles; nor shall the territory of any
organized county be reduced below that area." (Const. Iowa,
art. 11, § 2.) It is evident that under the latter clause of this
provision the territory of unorganized counties could be re-
duced below 432 square miles, for it applies alone to organ-
ized counties. The case of *Garfield v. Brayton* (33 Iowa,
16) turned on the construction of the word "created," and the
effect of the act creating Crocker county. By that act the
county of Crocker was both created and organized. It was
made a county, with all of the rights and powers of an or-
ganized county. No further action was requisite or necessary
to complete its organization. Therefore the case of *Garfield
v. Brayton* has no bearing upon the one before the court, and
the other cases cited upon this point by the learned counsel
on the other side ( *Att'y Gen'l v. Fitzpatrick*, 2 Wis. 548; *Iowa
County v. Green County*, 1 Pin. 518) are still more conspicu-
ously out of point. It is therefore submitted that there can
be little doubt as to the intention of the constitution, and
that the court will find no difficulty in effectuating its pur-
pose consistently with the well-established rules of construc-
tion—which rules it is deemed unnecessary to review here.

The opinion of the court was delivered by

HORTON, C. J.: On the 4th of February, 1879, this court, upon the application of Hon. Willard Davis, the attorney general, allowed an alternative writ of mandamus to John P. St. John, governor of the state, requiring him to appoint some competent person within the county of Stafford to take the census and ascertain the number of inhabitants in that county, in order that it might be organized under the provisions of chapter 63, laws of 1876.

The governor refused to make the appointment, on the ground that the act of the legislature defining the boundaries of Barton and Pratt counties (ch. 61, Laws 1875) had reduced the area of Stafford county to less than four hundred and thirty-two square miles, and therefore the county was not entitled to be organized. The question whether this court has jurisdiction to compel the governor of the state to perform any official act, has been expressly waived by counsel at the direction of the governor, who is particularly desirous to obtain, by this proceeding, a judicial construction of chapter 61 of the laws of 1875, to determine his duty in the premises. Hence, we express no opinion as to our power to enforce action by the chief executive. The question presented to us is, ought the governor to organize the county of Stafford? Involved in this, is the effect upon the county, of the act of the legislature approved March 5th, 1875, entitled "An act defining the boundaries of Barton and Pratt counties." If this act is valid, it is conceded that it is such an impediment to the organization of the county that the governor is fully justified in refusing to appoint any person to take the census. A reference to the counties of Barton, Pratt and Stafford is necessary to fully understand the present status of the latter county. These counties were created and christened by the legislature in 1867; (ch. 33, Laws of 1867, p. 51.) Their boundaries were again defined, but not changed, in 1868; (Gen. Stat. 1868, ch. 24.) With slight exceptions, their limits remained in this condition till 1875, when the

legislature, by the act of March 5th, 1875, attempted to take from Stafford for Barton county, townships 21–23 of ranges 11–14, and for Pratt county, townships 24 and 25 in said ranges, leaving only townships 24 and 25, of range 15, to constitute Stafford county — an area of 72 square miles. At the passage of this act Barton contained an area of 900 square miles, Pratt 720, and Stafford 792. If this act is a valid law, Barton has 1,332 square miles, Pratt 1,008, and Stafford 72.

On the one hand, it is contended that the said act of March 5, 1875, is void, as being in conflict with § 1, art. 9 of the state constitution. On the other, it is insisted that this provision has no application to unorganized counties; and that over them the legislature has full control, without any constitutional limitation or restriction. Section 1, art. 9, reads as follows:

"The legislature shall provide for organizing new counties, locating county seats, and changing county lines; and no county seat shall be changed without the consent of a majority of the electors of the county, nor any county organized, or the lines of any county changed so as to include an area of less than four hundred and thirty-two square miles."

It is manifest from an examination of this section, that if the portion thereof relating to changing county lines applies to Stafford, the claim of counsel for the state must prevail. The concluding clause contains the words "*any county.*" These words are broad in their signification, and primarily comprehend *all* counties, whether organized or unorganized. No other construction can be adopted without wresting words from their ordinary meaning. Now, at the passage of the act of March 5, 1875, Stafford county was known and recognized as a *county*. True, it was unorganized, but it had been named, and its boundaries afterward defined by four several acts of the legislature. The express constitutional prohibition against reducing its limits below the minimum size extended to it, as much as if it had been organized. We are fortified in this opinion from the history of this section

in the constitutional convention and a perusal of the debates of the framers of that instrument. Mr. Burris, a member of the convention, who was substantially the author of this limitation on the power of the legislature over counties, used the following language in regard to it:

"I do not understand that my amendment proposes to legislate. It is merely a restriction upon the legislature, just as we have incorporated in other articles of the constitution. . . . The substance of my amendment is the same as that incorporated in the constitution of the state of Iowa, with which I am more familiar than with any other state constitution. I think there will be no necessity in any part of the territory to organize a county of less area than four hundred and thirty-two square miles." (Kas. Const. Proceedings, 136, 137.)

Afterward, Mr. Greer offered the following substitute for the whole section: "No new county shall be laid off hereafter, nor *old county* reduced to less contents than four hundred and thirty-two square miles, leaving the power to change county lines and seats with the county boards." Mr. Burris opposed such substitute, and favored the original section as amended by him, and said: "It seems to me that the section as amended, is now extending to the legislature all the power that is proper to protect the rights and interests of the people. It is saying . . . that there shall be no new county of a less area than four hundred and thirty-two square miles." (Kas. Const. Proc., 138.)

Further, in the closing days of the convention, when that body was having under consideration the verification of the instrument, Mr. Preston offered an amendment to withdraw a portion of the restrictions upon the legislature, whereupon Mr. Burris replied: "The design of this amendment seems to be to strike out that part of the section which prohibits the legislature from creating a new county with less than four hundred and thirty-two square miles, or from reducing any county below that. I hope it will not prevail. That provision has been considered by the convention. I am opposed to reconsideration, unless there is a palpable necessity for

amendment." The amendment of Mr. Preston was then ruled out of order. ( Kas. Const. Proc., 419.)

At the time these proceedings were had in our constitutional convention, the constitution of Iowa expressly prohibited the creation of any new county with less than four hundred and thirty-two square miles, or the reduction of any organized county below that area, and thus by implication no new or unorganized county could be cut down to less than the same area. By the constitutional inhibition of our state, no county is to be organized with an area of less than four hundred and thirty-two square miles, nor the lines of *any* county changed so as to include a less area, and thus by implication no new county is to be created with less than four hundred and thirty-two square miles. Although the wording of the two constitutional provisions is somewhat different, both effectuate substantially the same object.

Without further references or more extended argument, we conclude that at the date of the passage of the act of March 5th, 1875, Stafford was an existing county of the state; that § 1, art. 9, of the state constitution, protected it from being reduced to an area of less than four hundred and thirty-two square miles, and we must regard said act, therefore, as void, because in conflict with the constitution. (*Duncombe v. Prindle*, 12 Iowa, 1; *Garfield v. Brayton*, 33 Iowa, 16.)

Under these views, Stafford county still exists, with the area and boundaries it possessed immediately prior to March 5th, 1875, and the attempt to carve it up has wholly failed from a violation, by the legislature, of the paramount law of the state.

Let a peremptory writ of mandamus issue, as prayed for, commanding the governor to appoint at once an inhabitant of Stafford county to take the census.

All the Justices concurring.