State *v.* Scott.

STATE, AT THE RELATION OF DOUGLASS, Respondent, *vs.* SCOTT, Appellant.

1. Where an act establishing a new county within the limits of an old one is unconstitutional, the sheriff of the old county may proceed by *quo warranto* against the person assuming to act as sheriff of the new county.
2. *It seems,* that a clause in a law establishing a new county, requiring it to be submitted to a vote of the people who are to bear the consequent burdens, might not be held unconstitutional.
3. Under the amendments to the state constitution, ratified in 1849, a law establishing a new county, by which an old one was reduced below the ratio of representation, was held unconstitutional, notwithstanding a proviso that, for the purposes of representation, the inhabitants of the new county should continue to vote as in the old one, until the population of the new county should entitle it to a representative.

## Appeal from Henry Circuit Court.

*Wright* and *Hicks,* for appellant. The sixth section of the act in question providing for its submission to a vote of the people, is not unconstitutional. *Commonwealth* v. *Judges,* 8 Barr, 391. *Commonwealth* v. *Painter,* 10 Barr, 214. Even if that section is void, the whole act is not thereby rendered void. That section may be considered as stricken out, and the balance of the act may stand. *Clark* v. *Ellis,* 2 Blackf. 8. The act did not reduce Bates county below the ratio of representation, within the meaning of the constitution. Vernon county was organized for civil and military purposes only, which is expressly allowed by the amendment to the constitution. It might more properly be termed a district than a county. The act expressly provides that, for the purposes of representation, the inhabitants shall vote as before.

*Leonard, Winston* and *Ballou,* for respondent. The act of February 17, 1851, establishing Vernon county, is unconstitutional and void. All legislative power is vested in the general assembly, and cannot be delegated. No legislative power is vested in the body of the people. The act in question is not a law, but a proposition. It does not exist as a law

State *v.* Scott.

*proprio vigore,* as it comes from the general assembly, but is enacted into a law at the ballot box. It is not the judgment of the legislative department of the government, but of the people of Bates and Cass counties. *Rice* v. *Foster,* 4 Harr. (Del.) Rep. 480. *Parker* v. *Commonwealth,* 6 Barr, 507. *Holley* v. *Bengen & Fancher,* Code Reporter of April, 1851. *Tanner* v. *Trustees of Albion,* 4 Hill's Rep. 138. Again, it reduces the county of Bates below the ratio of representation existing at the time the act was passed, and so violates the amendment to the constitution ratified in 1849.

GAMBLE, Judge, delivered the opinion of the court.

An information in the nature of a *quo warranto* was filed in the Circuit Court of Bates county, against Scott, charging him with exercising unlawfully the powers, and performing the duties, of the office of sheriff within the limits of the county of Bates, when another person had been duly elected and qualified as sheriff of that county, and was in the discharge of its duties. The defendant pleaded that the general assembly, by an act approved February 17th, 1851, established the county of Vernon out of territory which before had been partly in Bates and partly in Cass counties ; that the sixth section of that act provided, that a poll should be opened at all the precincts in the counties of Bates and Cass, on the first Monday in August, 1851, and if the majority of the aggregate votes of the two counties, should be in favor of establishing the new county, then the act should be and remain in force, unless the majority of votes given within the limits of the new county should be " against its ratification," in which case, the act should be void and inoperative, and none of the provisions of the act to be in force until after such election. The plea alleged that the vote had been taken, as required by the act, and that the majorities had been in favor of the establishment of the new county, and that, under the provisions of the law, the defendant had been regularly appointed sheriff of the county of Vernon, in which

capacity, and in none other, he had performed the functions and exercised the powers of sheriff within that part of the territory of Vernon county which had formerly been within the limits of Bates county. To this plea, there were two replications. The first of which was merely a demurrer, as it alleged that the act of the general assembly, pleaded by the defendant, attempted to confer legislative power upon the people of Bates and Cass counties, and so was contrary to the constitution and void. The second replication alleged, that the county of Bates, at the time of the passage of the said act of assembly, contained a less number of permanent free white inhabitants than the ratio of representation then required—such inhabitants then amounting to the number of three thousand three hundred and thirty, when the ratio of representation was then three thousand six hundred and forty-five and twenty-seven twenty-eighths of permanent free white inhabitants ; that by the passage of said act, the number of permanent free white inhabitants of Bates county was reduced to a number below the ratio of representation then required, to-wit : to the number of two thousand five hundred, and so the said act was contrary to the constitution and void. To the first replication, the defendant, in the form of a rejoinder, answered, that the act of assembly was constitutional and not void, and so an issue of law was made in the form of an issue of fact. To the second replication, the defendant rejoined that, by the said act of assembly, it was provided that, for the purposes of representation, the county of Vernon should vote as theretofore ; that is, that the citizens of that portion of Vernon, taken from Bates, should vote as in Bates, while the citizens of the territory taken from Cass should vote as in Cass, until the population should entitle Vernon county to a representative. To this rejoinder, the state demurred. There was also a plea, in which the defendant denied that he exercised or usurped the office of sheriff of Bates county, as in the information was supposed, and on this plea issue was joined. The case having been removed by a change of venue to Henry county, was heard by the court

upon the demurrers, and the act of the general assembly establishing Vernon county, was decided to be unconstitutional and void, and so the demurrers were decided in favor of the state. The issue of fact being submitted to the court, it was found that the defendant did exercise and execute the office of sheriff within the limits of Bates county, and usurped the liberties and privileges of the office of sheriff within said county, without any legal right or warrant therefor. Judgment of ouster was given against said defendant, and he was fined one cent.

1. Upon the argument of this case, a doubt was suggested whether the present proceeding affords the appropriate remedy for the illegal act of the defendant in exercising the functions of sheriff within the county of Bates, as it was originally organized, when he did not claim to be the sheriff of Bates county, but to hold a commission as sheriff of Vernon county. The parties themselves have not raised the question, nor has it been much discussed at the bar, as they seem to desire a decision of the graver questions involved in the controversy, by which the right of the defendant to the office of sheriff will be determined. The statute giving the jurisdiction to the Circuit Court, in cases of *quo warranto*, is very comprehensive, and allows the remedy to be used in all cases in which any person usurps, intrudes into, or unlawfully holds or executes any office, or franchise, and allows the information to be filed with the leave of any Circuit Court, by the circuit attorney of the proper circuit. There are many duties and powers which, by law, belong to the office of sheriff, and which he performs and exercises within the limits of his county, beside the service of process issued from the courts of his county. He takes the census, acts as conservator of the peace, &c., and such duties are performed throughout the whole extent of his county, by the command of the law, without process. A person who, within the limits of an organized county, undertakes to exercise the functions of sheriff, by performing the duties which are by law enjoined upon the sheriff, may be said to intrude into the office of sheriff of the county, although he may

claim to act by virtue of a commission as sheriff of a different county. With this glance at an argument by which the present proceeding may be supported, the doubt suggested to the counsel, and which was not discussed at any length at the bar, will be dismissed, and the question really discussed will be considered and disposed of.

2. The first objection to the constitutionality of the law establishing Vernon county is, that the act professes to make its own operation dependent on the votes of the people, at the poll which it directs to be opened, and that this is an attempt to delegate to the people of the counties of Bates, Cass and Vernon, the legislative power which the constitution vests in the general assembly. As this question arises in another case before the court, which will be decided at this term, and as the other objection to the act establishing Vernon county is believed to be fatal to it, the question made will, in the present case, be waived. It may be proper, however, to state, that it is not by any means clear to the minds of the court, that the act under consideration is, or professes to be, a delegation of legislative power. The establishment of a county, upon the consent of the inhabitants to assume the consequent burdens, is not like the submission of a law affecting private rights to the vote of the inhabitants of a particular locality, to determine whether it shall be in force or not.

3. The second objection to the act is, that by the establishment of Vernon county, the permanent free white inhabitants of Bates county were reduced below the ratio of representation then existing under the amended constitution. The clause of the amendment adopted at the session of 1848–9, which affects this question, is in these words : " No county now established by law shall ever be reduced by the establishment of new counties, to less than twenty miles square, nor to less than five hundred square miles, *nor below the ratio of representation then required* ; nor shall any county hereafter established be entitled to a separate representation, unless the number of permanent free white inhabitants therein shall, at the time, be

equal to three-fourths of the ratio of representation then being, but may be organized with a smaller number for all other purposes, civil and military."

The rejoinder to the second replication admits the effect of the act to be, that Bates county was reduced by the establishment of Vernon county below the ratio of representation then existing, and attempts to avoid the effect thus produced by alleging that, under the act, Vernon county is not to be entitled to a separate representation until the population will authorize it; and in the mean time, her inhabitants are to vote in Bates and Cass counties, as if no new county had been established. It is obvious, from this statement, that if the section of the act which provides for the citizens of Vernon county voting in Bates and Cass counties, does avoid the effect of the reduction of the free white population of Bates county below the ratio of representation, the act is unconstitutional.

Bates county, having been established before the amendment of the constitution, is never to be reduced in population, by the establishment of a new county, below the ratio of representation. This is a positive prohibition, and is not only for the benefit of Bates county, but of every other county in the state ; for all other counties are interested in preventing a full representation being allowed to a fraction of representative population. Bates county, as an old county, is entitled to a representative, whether she have more or less than the ratio. To reduce her below that ratio, is to give to the fraction of the ratio a full representation, and this is the very result forbidden by the amended constitution. Now if the inhabitants stricken off from Bates and included in Vernon county, were always to vote as inhabitants of Bates, or were not to have a separate representation until both Bates and Vernon were each equal to the ratio of representation, then no wrong to any other portion of the state would be done. But the amendment to the constitution will entitle Vernon county to separate representation, whenever her permanent free white inhabitants shall be equal to three-fourths of the ratio of representation then be-

ing, and this is the number or proportion referred to by the eighth section of the act, when it requires the inhabitants of Vernon to vote in Bates and Cass counties, until the population will entitle said county to a representative. Under this provision of the amendment, the fraction in Vernon county will be entitled to a representative, whenever it is equal to three-fourths of the ratio, while the fraction in Bates, whether great or small, will also be entitled to a representative.

It has been said, in argument, that the design of the whole amendment was to approximate to equality of representation, and that the present act does not violate the spirit of the provision, while the inhabitants of Vernon, for the purpose of representation, are still to be considered as in the old counties of Bates and Cass. But it is to be remembered that the act itself is a violation of the prohibitory clause of the constitution in reducing Bates county below the ratio of representation, and this court is not at liberty to speculate upon the probability that the voters in Vernon will continue to vote in their old counties, until Bates county will have a full ratio. We are not speculating whether, in the future, there may be a violation of the constitution, but, according to the pleadings in this case, there has already been a violation of the constitution ; and we are asked to conjecture, whether the injurious effects of that violation may not be avoided by facts that may hereafter occur.

It has also been urged, that Vernon county is not organized fully as a county, entitled to all the privileges of a county, but as a district, with a smaller number than three-fourths of the ratio of representation, organized for civil and military purposes, under the last clause of the amendment. The prohibition in relation to the representation of new counties is in these words : "Nor shall any county hereafter established, be entitled to a separate representation unless the number of permanent free white inhabitants therein shall, at the time, be equal to three-fourths of the ratio of representation then being." This prohibition is entirely independent of that which forbids the establishment of a new county, when establishing it would reduce an

old county below the area or the number of free white population required by the constitution. It applies to the case of establishing a new county out of the territory of one or more old counties, leaving the old ones the constitutional dimensions and population, but including in the new a free white population below the ratio of representation. In such case, it forbids a separate representation to the new county, until it has a permanent free white population, equal to three-fourths of the ratio of representation. Next follows the qualification or explanation of that clause, in these words : "but may be organized with a smaller number for all other purposes, civil and military." This language authorizes the organization of a new county, for civil and military purposes, with a population below three-fourths of the ratio of representation, but does not, in any measure, diminish the force of the first prohibition, that an old county shall not be reduced below the ratio of representation by the establishment of new counties. As the whole of this sentence in the amendment is to be regarded as addressed to the general assembly, it speak this language : "You shall not, by establishing new counties, reduce one now in existence below certain dimensions or a certain population ; if you establish a new county, it shall not have a separate representation until it contains three-fourths of the ratio of representation, but you may organize it for all civil and military purposes other than representation, with a smaller number."

The act creating Vernon county a distinct county, for civil and military purposes, is not unconstitutional, because its population is too small ; for the number necessary to such an organization is not specified in the constitution ; but if it reduces Bates below the ratio of representation, then it is unconstitutional. Does it now reduce Bates below that ratio ? The county of Bates is the territory that remains after that taken to form Vernon is cut off ; for in no sense is the territory of Vernon a part of Bates county, although its inhabitants or voters may vote "as in Bates." Their right to vote in elections of Bates and Cass counties does not constitute the portion of

country in which they live, parts of those counties. The prohibition then, against the reduction of old counties is imperative, and forbids the organization of new counties, which will occasion the reduction, whether the organization professes to be the complete organization of a county, or the organization for civil and military purposes only, with a right to representation when the population will entitle the new county to a separate representation.

With this view of the act, it is the opinion of the court that, as the case is now presented upon the record, the act is unconstitutional and void.

Upon the issue of fact, the finding was fully against the defendant, and no question has been made in the discussion at bar upon that part of the case.

The judgment of the Circuit Court is, with the concurrence of the other judges, affirmed.