State *v.* Rich.

—————

THE STATE, Appellant, *vs.* RICH & RICH, Respondents.

1. A law cannot be judicially declared unconstitutional, in a public prosecution, upon the admission by a circuit attorney of a fact upon which its unconstitutionality depends.
2. The constitutionality of a law establishing a new county cannot be inquired into upon a motion to quash an indictment found in a court of such county.

*Appeal from Lawrence Circuit Court.*

John W. and John Rich were indicted in the Circuit Court of Stone county, at the June term, 1853, for an assault. Upon their motion, the cause was subsequently removed by change of venue to the Circuit Court of Lawrence county. They there moved to quash the indictment, assigning as a reason that the law establishing the county of Stone was unconstitutional, because its effect was, to reduce the population of Taney county below the legal ratio of representation. At the hearing, the circuit attorney admitted that such was the effect of the law, and thereupon, the court sustained the motion and quashed the indictment. The circuit attorney, on behalf of the state, appealed to this court. The cause was submitted without oral argument.

*Gardenhire,* (attorney general,) for the State. `The case

of *The State* v. *Scott*, 17 Mo. Rep. 531,) and *The State* v. *Gates*, to be decided at the present term, will decide this case.

There was no brief for the respondents.

LEONARD, Judge, delivered the opinion of the court.

This judgment must be reversed, and the cause remanded, *to be proceeded in to a final trial and determination.*

The ground of the motion to quash the indictment was, that the act of the general assembly establishing the county of Stone, (Sess. Acts, 1851, p. 186,) where the indictment was found, was unconstitutional, because the establishment of this county had the effect of reducing the old county, (Taney,) from which it was taken, below the ratio of representation then required ; that, therefore, Stone county was not constitutionally established, and that, of course, there was, in point of law, no such court constituted as the Stone Circuit Court, where an indictment could be lawfully found ; or, in other words, that there was no case lawfully in the Lawrence Circuit Court, which that court could proceed to try and determine. The circuit attorney admitted the alleged fact, and upon this admission, the court decided that the act of the general assembly referred to was contrary to the state constitution, and that, consequently, the Stone Circuit Court not being lawfully constituted, the indictment was a nullity, and must be quashed.

1. The invalidity of this act does not, as is usually the case, appear upon the face of the statute ; it is impossible, therefore, to determine, from a comparison of the act with the constitution, that there is any conflict between them.

The old statute of this state, establishing loan offices, was declared to be a violation of the federal constitution, because it appeared upon the face of it that the paper certificates which it authorized to be issued were "bills of credit," within the meaning of that instrument ; but here, the alleged nullity depends upon an extraneous fact, that may or may not be true, *that the erection of the new county left the old county with a population less than the existing ratio of representation*

*required.* A knowledge of the law is imputed to the courts of justice, and so *nul tiel record* cannot be pleaded to a public statute. (6 Bac. Abr. Stat., p. 394.) But the appeal is to the judges, who are supposed to know the law, and if the courts are to pass upon the validity of a legislative act, impeached on the ground that what it directs to be done produces an effect not allowed by the constitution, they must, of necessity, determine for themselves, in some way, the existence or non-existence of this fact. How they are to ascertain it, we need not stop here to inquire. It was the duty of the legislature to determine the matter for themselves, before passing the act, and a proper respect for a co-ordinate branch of the government requires us to presume that they did make the inquiry, and found that no · such consequence would result; and this presumption must stand at least until our consciences are satisfied, in some proper manner, that the fact was otherwise. In this case, there was no inquiry by the court into the fact suggested by the defendant; but upon the mere admission of the circuit attorney, the presumption in favor of the validity of a legislative act is repelled—the non-existence of the requisite population taken as true, and a public prosecution for a high offence, a matter in which the whole state was interested, suppressed, and the alleged criminal left to go unpunished. This cannot be. Although we, of course, impute no intentional error to the public officer who conducted the prosecution, it is manifest that it was not proper for him to make such an admission; nor indeed, was it proper for the court to allow it to be done, or to allow it, when made, to satisfy its conscience of the fact, so as to justify it in refusing to proceed in the trial of the cause.

2. This view of the matter is sufficient to produce a reversal of the judgment; but as the point is in the case, we propose to go farther, and declare that this inquiry cannot be gone into collaterally, on the trial of this cause, with a view to treat the indictment as a nullity. Whether there is any method, under our existing laws, of instituting an inquiry into the validity of a legislative act alleged to be void upon the ground now sug-

gested, we are not here called upon to decide ; but however this may be, we think such a proceeding must be a direct proceeding for that purpose, so that the judgment of the court may operate, as it were, *in rem*, and have the direct effect of settling the question permanently, in such manner that it cannot afterwards be made the subject of judicial investigation. Any other course would, it seems to us, be impracticable, and if practicable, full of intolerable inconveniences, and against all reason. The law is intended for practical use, and we may pause a moment to observe the working of any other course of decision upon the business of men and the interests of the community. By the act establishing this county, a local government is erected over the district of country embraced within its limits, and the necessary judicial tribunals and other offices are provided to carry on the government of the state in that locality. Among the first acts necessary to put the law into operation, is the appointment of the proper officers by the governor. He is required to act — the law imposes the duty upon him—there is nothing appearing on the face of the act itself that conflicts with the constitution, and he has no authority to institute any inquiry into the matter which is alleged to constitute its invalidity. The judges, too, are directed to hold their courts, and transact the business that is brought before them ; and they, too, like all others, must presume that the law is constitutional, until it is made to appear otherwise, and cannot themselves go into a judicial investigation of the question, without involving the absurdity of allowing a court so established to be a lawful tribunal for the purpose of adjudging itself to be a nullity. Civil suits and public prosecutions are instituted in these courts, and judgments are rendered affecting the lives and persons and property of individuals, and, after the lapse of years, all these things, whenever questioned collaterally, are to be adjudged void—the evil could not be endured.

It would, indeed, be impracticable to act upon any such principle. If, whenever any act done under the authority of the law came in question collaterally, the constitutionality of the law

could be contested, then the trial of the main issue must necessarily be delayed until the preliminary fact, upon which the validity of the contested legislative act depended, should be first tried and determined upon testimony, which, being different in different cases, might involve the absurdity of deciding the law constitutional one day, and unconstitutional the next. But we need not press these things farther; the result is manifest; all such inquiries must be excluded whenever they come up collaterally, and the county, its courts and officers, must be treated as things existing in fact, the lawfulness of which cannot be questioned, unless in a direct proceeding for that purpose.

We do not mean to raise any doubt as to the correctness of the proposition of law in the case of the *State ex rel. Douglass* against *Scott*, decided at the January term, 1853, of this court, (17 Mo. Rep. 521,) that "the legislature cannot lawfully reduce an old county, by the establishment of new counties, below the ratio of representation then required;" but only to say that the invalidity of the law cannot be drawn in question in the present proceeding, either upon the admission of the fact, or upon an inquiry into its truth.

The other judges concurring, the judgment is reversed, and the cause remanded.