## GARFIELD v. BRAYTON.

Counties: ORGANIZATION OF: CONSTITUTIONAL LAW. Under section 2, article 11 of the new constitution, no new county can be organized which contains less than four hundred and thirty-two square miles, except the county of Worth, and the counties west of it along the northern boundary of the State. It is accordingly *held*, that chapter 192, Laws of the 13th General Assembly, creating the county of Crocker, is unconstitutional.

*Appeal from Emmett Circuit Court.*

MONDAY, DECEMBER 11.

THE plaintiff filed in the office of John P. Hawer, Esq., an acting justice of the peace in and for Crocker county, a

petition claiming of defendant $10 on account of labor performed.

The defendant demurred to the jurisdiction of the court over the person of defendant and the subject-matter of the action, upon the ground that Crocker county, in which the-venue was laid, was organized under an unconstitutional law, being in contravention of the provisions of section 30, article 3, and of section 2, article 11 of the Constitution.

The demurrer was overruled, and judgment rendered for plaintiff. By agreement the cause was appealed to the circuit court of Emmett county, the appellee waiving all objection to the mode of presenting the questions assigned in the demurrer, and agreeing that Crocker county was organized under the provisions of chapter 192 of the laws of the thirteenth General Assembly, and that such fact appears on the face of the petition.

In the circuit court the demurrer was again overruled, and the judgment of the justice was affirmed. The defendant appeals. The further necessary facts are stated in the opinion.

*J. D. Springer* and *Cowan* for the appellant.

*Nourse & Kauffman*, with *O'Connor*, for the appellee.

DAY, Ch. J. — It is conceded that Crocker county has less than four hundred and thirty-two square miles of territory, and that the question of its constitutionality is involved in and properly presented by the record. Waiving, therefore, any consideration of the manner in which the subject comes before us, we proceed to the determination of the question, an early settlement of which is probably important to those interested in it. In 1851, the territory in question was constituted a county called "Bancroft," and the territory immediately south of it, including sixteen townships, was created into a county called "Kossuth."

At the same time "Humbolt" county was created, south
of Kossuth, comprising sixteen townships. Ch. 9, Laws
1851, §§ 28, 37 and 46. These counties remained unor-
ganized. East of Bancroft were Winnebago and Worth
counties, and west of it were Emmett, Dickinson, Osceola
and Buncombe, now Lyon. In 1855, the counties of Kos-
suth, Bancroft, and the north half of Humbolt county, were
united into one county called Kossuth, and the remainder
of Humbolt county was attached to Webster. Ch. 141,
Acts 1855. . The territory continued unorganized, and for
election, judicial and revenue purposes was attached to
Webster county. Acts 1855, ch. 142. Chapter 147 of
the Acts of 1857, re-created and organized the county of
Humbolt, out of townships 91, 92 and 93 of ranges 27, 28,
29 and 30, leaving north of it Kossuth county, extending
to the northern boundary of the State, and comprising six
full and one fractional townships from north to south, and
four full townships from east to west. While matters stood
thus, the constitution of 1857 took effect. Section 2 of
article 11 thereof is as follows : "No new county shall be
hereafter created containing less than four hundred and
thirty-two square miles ; nor shall the territory of any
organized county be reduced below that area ; except the
county of Worth, and the counties west of it, along the
northern boundary of this State, may be organized without
additional territory." The meaning of this provision is
thus explained by a member of the committee who reported
the clause to the constitutional convention : "The section,
as it now stands, is the section in the old constitution upon
this subject, with the addition of the proviso, which is ren-
dered necessary from the fact that, upon a late survey of
the boundary of this State upon the Minnesota line, it was
found that the county of Worth and the counties west of
it contain less territory than is required to make them con-
stitutional counties. Hence the reason for offering this
proviso, so that these counties might be organized with

their present territory." Constitutional Debates, vol. 2, p. 798.

This provision of the constitution is susceptible of but one construction. The unorganized county of Worth, and the unorganized counties west of it, containing less than four hundred and thirty-two square miles, may be organized-without additional territory, but no *new* county shall be created containing less than four hundred and thirty-two square miles. Crocker county is a new county, created by chapter 192 of the laws of the thirteenth General Assembly, and confessedly contains less than four hundred and thirty-two square miles. It seems impossible to avoid the conclusion that its creation is an infraction of the provisions of the constitution. Indeed, the proposition, like a primary truth in physics or an axiom in mathematics, seems so self-evident as not to be susceptible of proof. It is claimed by appellee that the constitution had no reference to the legislation forming this territory into unorganized counties, and that the words, "without additional territory," mean without more territory than Worth county had, and not without territory additional to the territory *they then* had. If this was the idea intended to be conveyed by the convention, it has been most unhappy in the selection of words with which to express its meaning. Certainly, this construction can be adopted only by wresting words from their ordinary meaning, for the purpose of mitigating a supposed hardship, or of effectuating a supposed intention. Additional territory means added territory. The county of Worth and the counties west of it may be organized without *added* territory. It will not do to say that the counties west of Worth may be organized without territory *added to Worth.* This would be unmeaning.

And, when we say that the counties west of Worth may be organized without *more* territory than Worth county has, we ignore the language of the constitution, and sub-

stitute therefor that of different import. We have no authority to do this. We cannot adopt the construction contended for. It is further claimed that the convention had in mind the old county of Bancroft as still existing in its territorial extent, and made provision for its organization with its original limits and area corresponding to those of the county of Worth. This may be so, but there is nothing in the instrument adopted by the convention to lead to this opinion.

The business of the advocate is to adopt a conclusion, and then sustain it by the best reasons possible; that of a court is to pursue arguments to their legitimate results. And where reason leads it is the duty of a court, however unwillingly, to follow. We have approached this case with a strong desire to sustain the constitutionality of this county, and have reluctantly yielded to the necessity of doing otherwise. In the eloquent language of appellee's counsel, we hoped "that Crocker county might endure as long as the name of brave men should be dear to the hearts of the people of Iowa." But law is inexorable, and, to its stern behests, sentiment must yield.

Reversed.