CASE 11—ACTION BY C. V. ZIMMERMAN AGAINST C. C. BROOKS, INVOLVING THE VALIDITY OF THE ACT OF THE LEGISLATURE OF KENTUCKY, CREATING THE COUNTY OF BECKHAM.—APRIL 29.

# Zimmerman v. Brooks.
# Carter County v. Brooks, &c.

APPEAL FROM CARTER CIRCUIT COURT—S. G. KINNER, CIRCUIT JUDGE.

NEW COUNTIES—FORMATION—CONSTITUTIONAL RESTRICTION—LEGISLATIVE COMPLIANCE—JUDICIAL QUESTION—COUNTY BOUNDARIES—ERROR IN DESCRIPTION—JUDICIAL NOTICE.

1. A legislative act creating new county by metes and bounds will be treated like a patent, and, though one of the calls is inaccurate, yet where another section of the act gives the boundaries of the five magisterial districts composing the county, and by putting these districts together the mistake in the call can be discovered and corrected, the act will not be held invalid.

2. The court will take judicial notice of the counties of the State and their boundaries as fixed by statute, and of the public surveys made by the State and published by its authority.

3. It is a judicial question, for the courts to determine, whether the General Assembly, in creating a new county, has violated Constitution, sec 63, providing that no new county shall be created by the General Assembly which will reduce the county or counties, or either of them, from which it shall be taken to less area than 400 square miles, nor shall any county be formed of less area, nor shall any boundary line thereof pass within less than ten miles of any county seat of the county or counties divided; and section 64, providing that no new county shall be established which shall reduce any county to less than 12,000 in-

Zimmerman v. Brooks.
Carter County v. Brooks, &c.

habitants, nor shall any county be created containing a less popula-
tion.

W. C. HALBERT, ATTORNEY FOR LEWIS AND CARTER COUNTIES.

R. C. BURNS AND H. C. BROWN, OF COUNSEL.

POINTS MADE AND AUTHORITIES CITED IN BRIEF.

1. Carter and Lewis counties have a vital and material interest in the subject matter of the litigation as the validity of the law depriving them of a large portion of their territory, population, taxable property, highways, bridges, and as to Lewis other public improvements were involved in the settlement of this question, and it was not only their legal right but their duty to intervene in the action to protect their constitutional rights and privileges. Morris v. Barclay, &c., 2 J. J. Mar., 374; Greenup County v. Maysville and Big Sandy Railroad Co., 88 Ky., 659; Lawrence County v. Chattaroi Railroad Co., 81 Ky., 225; Christian County v. Rankin & Tharp, 2 Duval, 503; Lincoln County v. Magruder, 3 Mo. App., 314; Louisville and Nashville Railroad Co. v. Whitley County, 95 Ky., 215; Stearns County v. St. Cloud Railroad Co., 36 Minn., 425; Commissioners Ct. v. Moore, 53 Ala., 25; Pulaski County v. Lincoln, 9 Ark., 320; Modoc County v. Spencer, 103 Cal., 498; Paola, etc. v. Anderson County, 16 Kan., 302.

2. Carter county having tendered its verified petition to be made a party within two days after the action was filed, excepting to the judgment and its petition and application to file it being made part of the record by bill of exceptions, it had a right to appeal from the judgment. Williams v. Hall, etc., 7 Ben. Mon., 295; Bicklin v. Kendall, 72 Iowa, 490; Tubbs v. Doll, 15 Wis., 640; 1 Freeman on Judgments, 4 ed., sec. 21.

3. The courts have the power and are charged with the duty to construe the laws of the State in any action litigated before them in which the construction of the law becomes essential and as part of this power and duty they have the right to declare an act passed by the Legislature null and void when, in their judgment, it contravenes the organic law. 6 Am. and Eng. Ency. of Law, 2 Ed., 1036 and 1079; 26 same, 568; Cooley's Con. Lim., 6 Ed., 57, 69 and 193; Marberry v. Madison, 1 Cranch, 138; Hanson v. Vernon, et al., 27 Iowa, 28; Mauldrin v. City Council of Greenville, 46 Am. St. Rep., 723; Opening of Ruan St., 132, Pa.; Bliss v. Commonwealth, 2 Littell, 90; Lapsley v. Brashears, etc, 4 Little, 46; Purnell v. Mann, etc., 105 Ky., 87.

4. Sections 63 and 64 of the Constitution are mandatory on the

Legislature and no law enacted by it in violation of these sections can stand. Cooley's Con. Lim., 6 ed., 93, 97, 98; Sutherland on Stat. Con., sec. 79; Varney v. Justice, 86 Ky., 596.

5. The act of the Legislature creating Beckham county while presumptively valid and constitutional is not conclusive of that fact and the courts when the act is questioned by any one or any county as violating his or its vested rights acquired under the Constitution may determine the area of the counties affected by the act, the area of the new county, the distance of its boundary line from the county seats of the counties affected by the act by an actual survey by its officers and agents and from such survey and other evidence find and determine the true and actual area of the counties and the distance of the county seats from the lines of the new county and if from such evidence the court is satisfied the organic law has been violated by the act declare it wholly invalid.

6. The evidence of such actual survey is superior to and overcomes the mere presumption arising from the passage of the act. Bradley v. Commissioners of Powell County, 2 Humphreys, 428; Gotcher, et als., v. Burrows, et als., 9 Humphreys, 585; Maury County v. Lewis County, 1 Swan, 236; Bridgenor, et als. v. Rogers, et als., 1 Coldwater, 259; Humphreys County v. Houston County, 4 Jere Baxter, 593; State ex rel. v. Merriman, 6 Wis., 14; In the matter of Short, 47 Kan., 250; State, &c. v. Dorsey County, 28 Ark., 378; Lanning v. Carpenter, 20 N. Y., 447; City of Covington v. Southgate, 15 B. Mon., 492; Trustees of Beattyville v. Daniels, 15 Ky. Law Rep., 793; Board of Trustees of Elkton v. Gill, 94 Ky., 138; Cheany v. Hoover, 9 B. Mon., 330; Mathews v. Shields, 2 Met., 553.

7. The Legislature has not the power under the Constitution to enact any law and either expressly or by implication preclude any judicial inquiry into the fact whether it violates the organic law or not. City of Louisville v. Cochrane, 82 Ky., 15; Johnson, &c. v. Ferrell, 8 Ky. Law Rep., 217.

8. The courts must take judicial notice of the boundaries of the established counties of the State and their area and having this knowledge they know without any evidence other than the official records that it is a mathematical impossibility for the Legislature to create a new county with an area of 400 square miles out of the contents of Elliott, Carter and Lewis, or including Rowan and Greenup, without reducing all of these counties below their constitutional area and thereby violating their vested rights under the organic law of Kentucky. Woods, ex rel v. Henry, et als., 55 Mo., 560; Board of Commissioners of Jasper

Co. v. Spitler, 13 Ind., 239; Mode v. Beasley, 143 Ind., 324; Board of Commissioners of Jackson Co. v. State, et als., 147 Ind., 497; and cases there cited; Wright v. Hawkins, et al., 28 Texas, 452; 17 Am. and Eng. Ency. of Law, 2 ed., 912; same vol., 7, 908; Report of Geological Survey; Bureau of Agriculture, Labor and Statistics; State Board of Equalization and the Assessors's Books, and the laws creating and establishing the several counties of the State.

9. The counties of Carter and Lewis and their inhabitants have erected court houses, jails, built highways and bridges and have acquired vested rights in such improvements and the maintenance of their ancient territory undiminished and they can not be detached from their counties and by being attached to a new county required to construct other public buildings except in strict compliance with the mandates of the Constitution.

10. The act of February 9, 1904, creating Beckham county, is void on its face as it includes no defined boundary, and does not close. Constitution, sec. 51.

R. C. BURNS, ATTORNEY FOR APPELLANTS, LEWIS AND CARTER CONTIES.

### POINTS RELIED ON BY APPELLANTS.

#### STATEMENT OF CASE.

On the 9th of February, 1904, the act of the Legislature to create Beckham county was approved by the Governor, and containing an emergency clause, the Governor appointed C. C. Brooks, as county judge, of Beckham county.

The constitutionality of the act creating Beckham county being questioned, this action was instituted to determine the question.

The original parties are residents of the part of Carter county proposed to be included in Beckham county, and favorable to its creation. And Carter county being vitally interested filed an intervening petition. The circuit judge sustained a demurrer to the petition and overruled the motion of Carter county to file its petition. To which rulings it and Brooks objected.

This ruling was erroneous, because Carter county was vitally interested in the question. And public policy demanded as little litigation, and as speedy adjudication as possible, and a fair and full discussion of the questions involved.

### THE ACT UNCONSTITUTIONAL.

The act creating Beckham county is not constitutional because:

Zimmerman v. Brooks.
Carter County v. Brooks, &c.

1.   It establishes a county called Beckham with an area of less than four hundred square miles.

The demurrer confesses that the area of Beckham county is less than four hundred square miles.

Section 63, of the Constitution of Kentucky reads: "No new county shall be created by the General Assembly which will reduce the county, or counties, or either of them, from which it is taken to less area than four hundred square miles, nor shall any county be formed of less area." No county shall be created of less area than four hundred square miles. Beckham county has a less area than four hundred square miles.

Therefore the act creating Beckham county is unconstitutional. This logic is unanswerable.

2.   The area of Carter, Elliott and Lewis counties are each reduced below four hundred square miles by the act creating Beckham county.   The demurrer confesses the facts.

The Constitution of Kentucky, section 63, says: "No county shall be created by the General Assembly which will reduce the county, or counties from which it shall be taken to less area than four hundred square miles."

3.   The boundary line of Beckham county, so-called, passes within less than ten miles of the city of Grayson, the county seat of Carter county, at three points, and within ten miles of the city of Vanceburg, the county seat of Lewis county.

This is in plain violation of that part of section 63 of the Constitution of Kentucky which says that "no new county shall be created by the General Assembly where the boundary line thereof passes within less than ten miles of the county seat of the county or counties proposed to be divided."

4.  Section 64 of the Constitution of Kentucky forbids the General Assembly from establishing a new county which reduces any county from which it is taken to less than 12,000 inhabitants, in these words: "Nor shall any new county be established which will reduce any county to less than twelve thousand inhabitants."

The act creating Beckham county reduces the population of Carter and Elliott and Lewis counties below 12,000 inhabitants. This is confessed by the demurrer.

5. Section 64 of the Constitution of Kentucky forbids the creation of any new county containing a population of less than 12,000 inhabitants, as follows: "Nor shall any new county be established which will reduce any county to less than twelve thousand inhabitants, nor shall any county be created containing a less population." The demurrer confesses that the act in question establishes a county of less than 12,000 inhabitants.

Zimmerman v. Brooks.
Carter County v. Brooks, &c.

### CASES CITED BY R. C. BURNS.

Secs. 63, 64, Comt. of Ky.; Cooley's Comt. Law, pp. 139-157; 1 Story Comt., sec. 521; 1 Bl. Com., pp. 146, 269; 3 Am. & Eng. Ency. of Law, 673; Bliss v. Commonwealth, 2 Lit., 90; Bradley v. Comrs., 2 Hum. (Tenn.), 432; Gatcher et als. v. Burrows et als., Hum. (Tenn.), 585; Maury Co. v. Lewis Co., 1 Swan, 236; Humphreys Co. v. Houston Co., 4 Bax. (Tenn.), 593; The State ex rel Brayton & Waldo v. C. C. Merriam, 6 Wis., 14; Lumming v. Carpenter, 20 N. Y., 447.

### ADDITIONAL AUTHORITIES by H. CLAY BROWN, for APPELLANT—AUTHORITIES CITED AND CLASSIFICATION—EXTENT OF ADMISSION ON DEMURRER.

Norman v. Kentucky Board of Managers, &c., 93 Ky., 537 (Injunction); Am. & Eng. Ency. of Law, vol. 10, p. 779; Civil Code, sec. 271; Gates v. Barrett, 79 Ky., 295; Shinkle v. Covington, 83 Ky., 420; Brown v. Trustees, 11 Bush, 435; Newport v. Bridge Co., 90 Ky., 193; South Covington R. R. v. Berry, 93 Ky., 43; Constitutional Question, Kentucky Constitution, sec. 63; Montana v. Camp Sing, 32 L. R. A., 635; Mining Co. v. Haygood, 3 L. R. A., 841.

THEOBALD & THEOBALD, ATTORNEYS FOR APPELLEE BROOKS.

### SUMMARY AND AUTHORITIES.

1. A county is only a *quasi corporation* and differs in many respects from corporations generally. It is one of the civil divisions of a country for judicial and political purposes, created by the sovereign power of the State of its own will, without particular solicitation, consent or concurrent action of the people who inhabit it; a local organization which, for the purpose of civil administration, is invested with certain functions of corporate existence. They are not corporations in the fullest sense; their functions are political and administrative, and their powers are duties imposed rather than privileges granted. While in this country the county partakes more of the powers of the corporation than in England, yet the idea of a government by counties comes down from the remotest period of Anglo-Saxon history, and was imparted to the American colonies with the common law, and entered naturally and of course into the framing of all their Colonial government, from whence it passed by easy transition and necessary consequence into the government of the States.

Zimmerman v. Brooks.
Carter County v. Brooks, &c.

2. In this American country a county may sue or be sued upon any contract it is authorized to make, and it may sue in regard to public buildings, such as the court house, or as to highways, such as the public roads, and may have an injunction to restrain threatened injury to them, as has been held by this court in Lawrence County v. Chat. Railroad Co., 81 Ky., 225; Christian County Court v. Rankin and Tharp, 2 Duv., 503; Louisville, &c., R. R. Co. v. Whitley County, 95 Ky., 215; Greenup County v. M. & B. S. R. R., 88 Ky., 659.

3. But it never has been held or claimed heretofore that a county may come into the suits of private individuals and set up speculative matters, simply from the fact that the decision of some question in the case may be of general interest.

4. The matter in controversy in this action is whether or not appellant Zimmerman shall be sued before Brooks? As to this matter Carter county certainly can have no interest. That is the subject of the action, and that alone. As to the law involved, Carter county may be very much interested and very anxious to have it decided in a certain way, but this kind of interest does not authorize her intermeddling with this suit. She is not the guardian of the taxpayers of the county, or the citizens. That is not one of her official functions. It is not sufficient that the matters presented by the pleadings raise a question of law of common or general interest. Oswald, &c. v. Morris, &c., 92 Ky., 48.

5. It ought also to appear somewhere in the pleading or petition of the county that it was being offered by the authority of the fiscal court or that the fiscal court had refused to act. Commonwealth, &c. v. Tilton, &c., 20 Rep., 1056. No one can institute an action for the county until that court refuses to do so. The petition of Carter county should show authority from the fiscal court to take the step, or that the court refused to take it, as explained by this court in response to petition for rehearing, 20 Rep., 1216. None of these things appear.

6. It is not one of the implied powers of counties that they may interfere in suits between individuals, involving only individual rights, in no way affecting public property. The fact, if it be a fact, that Brooks is usurping the office of county judge can not be enquired into by Carter county in this action. The law provides a remedy in such a case. Civil Code, sec. 480-483. This is by an ordinary action in favor of the party entitled to the office, or the Commonwealth. In addition to this remedy an individual who is being proceeded against by such usurper may test his title in such action. Patterson v. Miller, 2 Met., 493; Commonwealth v. Jones, 10 Bush, 275.

7. Carter county.can not get out an injunction to restrain an individual from interfering with the county court, or the quarterly court. The courts have ample power to protect themselves. Neither can it interfere with individuals in reference to the collection of taxes. The sheriff has sole jurisdiction in this matter, and is the real party in interest. He can summon the whole county to his aid.

8. There is no multiplicity of suits, or any suits that can arise to engage the attention of Carter county by reason of the allegations of her petition, as there is not one she would be authorized to bring or could be brought against her on the charges set out. It does not show or claim that any damage will result to it in any way by reason of the matters set out in its petition, or that it has sustained any damages, or that Brooks is threatening to inflict any further damage.

9. And, finally, it may be said, from no point of view does the petition state any cause of action in favor of said county. It claims the act creating Beckham county is unconstitutional, and recites a state of facts upon which it bases its conclusion that the courts have no jurisdiction to enquire into. It, therefore, seems clear to us that the lower court was correct in refusing to allow the petition to be filed.

An affirmance of the judgment is respectfully asked.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

The last General Assembly passed an act, which was approved by the Governor on February 9, 1904, entitled "An act creating the county of Beckham." The first section of the act is in these words:

"Section 1. That the county of Beckham be, and the same is hereby, created, and the boundary lines thereof are established as follows:

"Beginning on three black oaks by the county, or old State road, the corner of John Reid's and Wilburn Hall's and Marion Oldfield's lands, being ten and one-half miles by survey from Grayson, the present county seat of Carter county, Kentucky; thence S. 12° 6' E. 36,740 feet to a small locust; thence S. 56° W. 2,871 feet to a black oak near the

open fork of Big Gimlet; thence N. 40° 30′ W. 19,860 feet to a white oak on Mauck Branch, so as to exclude William Binion's house; thence with the act of 1869, approved January 26, 1869, making Elliott county; thence with Mauck Ridge to the corner of Rowan, Elliott and Beckham counties; then N. 70° 6′ W. 14,465 feet; thence N. 26° 16′ W. 70,157 to the point near Briery Creek; thence due N. 31,480 feet; thence N. 9° 15′ E. 65,297 feet; thence due S. 12,238 feet to a small hickory and oak on top of Three Prong ridge; thence S. 5° 19′ W. 52,528 to the point of beginning."

The second section makes Olive Hill the county seat. The third section divides the county into five magisterial districts, and gives the boundary of each. The fourth, fifth, sixth, and seventh sections provide for the organization of the county, and make the act take effect from its passage. Appellee Brooks was appointed by the Governor county judge of Beckham county, pursuant to the act, and appellant Zimmerman, on March 4, 1904, filed this suit to test its validity. He alleged that the county of Beckham was created out of parts of the counties of Carter, Elliott, and Lewis; that the part taken from Carter county leaves it with only about 250 square miles; that the county line between Beckham county and Carter runs within less than ten miles of the county seat of Carter county; that Elliott county, before any territory was taken from it, had a less area than 400 square miles, and was by the act reduced to far less than that. He prayed judgment declaring the act void, and restraining Brooks from acting as county judge of Beckham county. Brooks demurred to the petition. The county of Carter then appeared in the action, and moved to file its petition, in which it sought the same relief as Zimmerman. It alleged that the matters involved were of

general interest to the inhabitants of Carter county, and of importance to it; that it was created in the year 1836, was authorized to sue and be sued, and had since its creation been in existence with regular county officers; that at the time the act creating Beckham county was enacted the area of Carter county was 354 square miles, the area of Lewis county 454 square miles, and Elliott county 274; that the line of Beckham county runs within six miles of Grayson, the county seat of Carter county, and within seven miles of Vanceburg, the county seat of Lewis county; that the area of Beckham county does not exceed 286 square miles, and that Lewis county is reduced by the act establishing the county of Beckham to 300 square miles, and Elliott county to 234 square miles; that the population of Beckham county is less than 12,000; that the population of Carter and Elliott is reduced by the establishment of Beckham county to less than 12,000 people, Elliott having at the time only in all 10,387 inhabitants; that the act creating Beckham county was unwarranted by the Constitution, and that thereby confusion would be caused in the affairs of Carter county, and it would be prevented from collecting its taxes, and the county officers would be obstructed in the discharge of their duties, thus disturbing the affairs of the county and producing a multiplicity of suits. It prayed that the act be declared unconstitutional, and that the defendant Brooks, who was a resident of Carter county, Olive Hill being in that county at the passage of the act referred to, be enjoined from acting as county judge. The court sustained a demurrer to Zimmerman's petition, refusing to allow the petition of Carter county to be filed, or to allow it to be made a party to the action. He thereupon dismissed the petition, and the two appeals before us were taken.

In the brief filed by the counsel for appellee, it is said: "The appellee does not wish to discuss or raise any points of minor importance as to the sufficiency of appellant's petition, but to proceed at once to the consideration of the all-important question to the people most interested, namely the constitutionality of the act creating the county of Beckham." We shall proceed, therefore, to settle the case on its merits, as it is of grave importance to all parties concerned to have the validity of the act settled before liabilities are incurred for county buildings, taxes are levied, or other steps taken in the organization of the proposed county. It is insisted for appellants that the boundary of the county, as given in the first section of the act, will not close, and in fact takes in part of the State of Ohio. But, taking the act as a whole, there seems to be enough in it to show what was meant, for the third section gives minutely the boundary of each of the five magisterial districts by natural objects, and by putting these districts together the mistake in the call of one of the lines, if there is one, can be readily discovered and corrected. The act must be treated like a patent, and will not be rejected as void because of a mistake in one of the calls, if from the whole act what was meant can be reasonably determined. The rule is that the court will inspect the whole act, and, if the actual intention of the Legislature can thus be ascertained, the false description will be rejected, or words substituted in the place of those used by mistake, so as to give effect to the law; thus "South" may be read for "North," or "East for West," in a call, where, from the act as a whole, the mistake is apparent; for it is a matter of common knowledge that mistakes of this character are sometimes made in transcribing. Palms v. Shewano County, 61 Wis., 211, 21 N. W., 77; Rabun County v. Habersham

County, 79 Ga., 248, 5 S. E., 198. In the latter case the word "River" in the enrolled bill was read "Ridge," it being manifestly a clerical error. It is not presumed that the Legislature intended to include in the county part of the State of Ohio. The calls may be reversed, as one line in the survey is of as much dignity as another, and if, on all the facts, a mistake in one of the calls is manifest, the actual intention of the Legislature should not for this reason be disregarded. Creech v. Johnson, 75 S. W., 185, 25 Ky. Law Rep., 657.

The constitutional objection to the act is more serious. Section 63 of the Constitution, which is part of its provisions defining the powers of the legislative department, contains the following: "No new county shall be created by the General Assembly which will reduce the county or counties, or either of them, from which it shall be taken, to less area than four hundred square miles; nor shall any county be formed of less area; nor shall any boundary line thereof pass within less than ten miles of any county seat of the county or counties proposed to be divided." Section 64 further provides: " . . . Nor shall any new county be established which will reduce any county to less than twelve thousand inhabitants; nor shall any county be created containing a less population." It is earnestly maintained for appellee that the constitutional restrictions as to area and population or location of the county line are for the guidance of the Legislature, and that, when the Legislature has determined these questions by passing the act creating the county, it is incompetent for the courts to inquire into the correctness of the legislative findings. In support of this view we are referred to a number of authorities. Thus, in De Camp v. Eveland, 19 Barb., 81, the constitutional provision was that no new county should be thereafter erected

unless its population should entitle it to a member in the
Legislature. It was held that the population of the county
at the time the act was passed controlled, and not its popu-
lation at the last census; that it would be presumed the
Legislature had enough before it to justify its conclusion on
the facts. The defendant, who had been convicted of a mis-
demeanor in the new county, did not offer to show that the
county did not in fact have, at the time of its creation, the
requisite population. This case was approved in Rumsey
v. People, 19 N. Y., 41, which was similar in its facts, and
the act was there sustained; but in the subsequent case of
Lanning v. Carpenter, 20 N. Y., 447, the act was held invalid
because it violated a provision of the Constitution forbidding
a change in the assembly districts until after the next enumer-
ation. In Luscher v. Scites, 4 W. Va., 11, the bill was by
a taxpayer to restrain the collection of taxes levied by the
county of Lincoln to pay debts it had created, on the ground
that the act forming the county was in violation of a con-
stitutional provision much the same as ours. The bill was
dismissed, although the allegations were substantially the
same as in the case before us, the court holding the legal
presumption was that, when the Legislature passed the act,
all the necessary facts were shown to its satisfaction, and
that the court could not go behind the legislative finding.
Further on in the opinion the judgment is also rested on
the ground that, if the plaintiff's action could be maintained,
every other taxpayer had the same right of action, and there
might be conflicting judgments, and the debts of the county
created in the erection of the public buildings might be left
unpaid. This case as followed in Farquharson v. Yeargin,

24 Wash., 549, 64 Pac., 717, where the allegation was that the new county had not the requisite population.

In re Short, 47 Kan., 250, 27 Pac., 1005, the defendant was convicted of manslaughter, and then took out a writ of habeas corpus on the ground that the county in which he was convicted did not have the requisite area under the Constitution, and therefore the act creating it was void, although the county had been in existence for years. The Constitution required the county should not have less than 432 square miles, and it was alleged that the county had only 430 1-2 spuare miles. It was held that the county was at least a *de facto* public corporation, that its existence could not be collaterally questioned, and that the validity of the act creating it could only be assailed in a direct proceeding. To the same effect is Ex parte Renfrow, 112 Mo., 591, 20 S. W., 682, and in that opinion other previous cases holding the same rule are referred to. On the other hand, in Tennessee, where they have a similar constitutional provision, in a number of cases it has been held that, if the act creating a county is in violation of the Constitution, it may be declared void by the court. Thus in Bradley v. Powell County, 2 Humph., 428, 37 Am. Dec., 563, the facts being disputed, the chancellor had a survey made to show what the truth was. Upholding its power to act in the premises, the court said: "The convention of the State which formed the Constitution thought proper to place restrictions upon the power of the Legislature to establish new counties, and, of consequence, any attempt to do so contrary to the restrictions is a void exercise of power, which can and must be stopped by the judicial department of the State. There is no other place to which an appeal can be made, and, if the court can not interfere, the Constitution, if violated, is a dead letter." This case was

followed in Gotcher v. Burrows, 9 Humph., 585; Maury County v. Lewis County, 1 Swan, 236; Bridgenor v. Rogers, 1 Cold., 259; Humphreys County v. Houston County, 4 Baxt., 593. In Bridgenor v. Rogers, the court's conclusions of law were as follows: "(1) A citizen and taxpayer of a county from which a portion of its territory is taken to form a new county may file a bill to inquire into the validity of the act creating the new county, if he does so before the new county becomes so organized as to become a political organization. (2) A county in its corporate character, whose territory has been reduced below 625 square miles, or her qualified voters below 1,000, may come into a court of equity, even after a new county has been organized, and have her territory or voters restored to her by decree of the court; and this is so whether the territory or voters have been reduced by the formation of a new county or by changing the line and attaching a portion of one county to another. (3) Before a portion of a new county will be restored to the county from which it was taken, it must clearly appear, by an actual measurement of the territory of the old county and an enumeration of its voters, that her constitutional rights have been invaded." In Wisconsin the same rule is followed under a similar constitutional provision. In Attorney General v. Merriman, 6 Wis., 22, the court, in answer to the argument that the legislative finding is conclusive, said: "As a general rule, courts undoubtedly always presume in favor of the constitutionality of an act of the Legislature, and in a doubtful case will sustain it. But how can that presumption be entertained in a clear case, when the act is expressly forbidden by the language of the Constitution? The reasoning, if it proves anything, proves too much. For it is manifest the same pre-

sumption would arise in favor of an act of the Legislature
dividing a county of an area of four or six hundred square
miles. Suppose the Legislature should pass an act dividing
Waukesha, Walworth, or Green county, each of which coun-
ties contain sixteen townships, must not the same pre-
sumption arise? Must not the court presume that the Legis-
lature, in dividing the county, passed upon the question of
fact, and hold that the law was valid? This applies a
fair test to the soundness of the argument. It
places it in a strong light to show more strikingly where
it leads. Of course, it would practically abrogate a provision
of the Constitution." . In State v. Dorsey County, 28 Ark.,
378, a writ of quo warranto was filed by the Attorney Gen-
eral against the county, in answer to which the county plead-
ed that it was created by an act cutting off portions of Lin-
coln and other counties. To this the plaintiff replied that
by taking off the portion of territory cut from Lincoln county
by the act it was reduced to less than 600 square miles, con-
trary to the Constitution. The defendants demurred to the
replication. The demurrer was overruled, and it was held
that certain evidence may controvert a statute, but it must
be of equal grade and character with the law itself, as,
for instance, some other official record or official surveys or
maps of which the court should take official notice. In Woods
v. Henry, 55 Mo., 560; State v. St. John, 21 Kan., 591, and
Garfield v. Brayton, 33 Iowa, 16, it was held that the court will
take judicial notice of the boundaries of counties and their
area, and if an act reduces a county below the constitutional
limit, or creates a county having a less area than allowed by
the Constitution, it is void, and will be so declared. See, also,
to same effect, State v. Scott, 17 Mo., 521; Perry v. State,
9 Wis., 19. In Board of Commissioners v. Spitler, 13 Ind.,

235; Board of Commissioners v. State, 147 Ind., 497, 46 N. E., 908, and Wright v. Hawkins, 28 Tex., 452, it was also held that the courts will take judicial notice of the area of counties.

It will thus be seen that the conclusions reached by the courts are more harmonious than the reasons given for them. The two New York cases reported in 19 Barb., and 19 N. Y., were criminal prosecutions, in which the invalidity of the act creating the county was relied on collaterally, and in the Missouri and Kansas cases it was held that this could not be done where the county was organized in fact and was an existing corporation. In the West Virginia and Washington cases the suits were by the taxpayer after the liabilities were created by the county as an existing corporation *de facto* and it is conceded in Tennessee that in this state of case the taxpayer can not maintain an action assailing the validity of the act creating the county; but the weight of authority is to the effect that, when assailed in the proper way and at the proper time, the court will enter upon the inquiry as to the constitutionality of the statute, while the Arkansas case seems to limit the evidence which may be received more narrowly than the other cases.

Lafferty v. Huffman, 99 Ky., 80, 18 R., 17, 35 S. W., 123, 32 L. R. A., 203, and Taylor v. Beckham, 108 Ky., 278, 21 R., 1735, 56 S. W., 177, 49 L. R. A., 258, 94 Am. St. Rep., 357, are relied on for appellee. It was held in the first of these cases that the enrolled bill, properly authenticated, is conclusive of the regularity of the steps taken in the passage of the statute, and in the other case it was held that the judgment of the Legislature, in a contest over the office of Governor, pursuant to the Constitution, is conclusive, and that the record made by the Legislature and approved by it

can not be assailed in the courts.   But neither of these
cases apply here; for the question is not one of regularity
of legislative proceedings, but of unauthorized legislation
invading private rights under the Constitution.   On the other
hand, in Massengale v. Lester, 104 Ky., 191, 46 S. W., 694,
20 R., 481, it was held that section 115 of the Constitution,
allowing the Legislature to redistrict the State in appellate
districts every ten years, is mandatory, and that an act
changing the districts within ten years was void.   It is true
the court had judicial knowledge that the attempted change
was made within less than ten years, but the court must
have judicial knowledge also of the counties of the State
and their boundaries as fixed by the statutes, and of the
public surveys made by the State and published by its author-
ity.   These are matters of common knowledge within the
State, contained in geographies, etc., and if the court does
not remember the facts it will resort to the books to re-
fresh its memory.   In this way we know approximately the
area of the counties of the State, and know that Carter
county had by the geological survey an area of 544 square
miles, Elliott county 270, Lewis county 450, total 1,264, as
given in the official report of the Bureau of Agriculture;
so that Carter county can properly only contribute 144
square miles to the formation of a new county, Elliott noth-
ing, and Lewis only 50 square miles.   We must therefore
take judicial notice that only 194 square miles can on this
basis be cut from these counties without infringing the man-
date of the Constitution.   We know also judicially that,
since the geogological survey was made of Carter county,
part of it has been cut off to other counties.   The State
Board of Equalization is created by statute, and reports
of its proceedings are published by the State, giving the

number of acres of land in each county assessed for taxation. From this we know that the land assessed for taxation in three counties, referred to is as follows: Carter 219,686 acres; Elliott, 141,982; and Lewis, 308,503. It thus appears that Carter county is now in fact not as large as Lewis, and contains less than 400 square miles, unless, which can not be presumed, a large per cent. of the county is not assessed for taxation. As shown by these figures, the actual area of both Carter and Elliott must be less than 400 square miles, and we must therefore presume that no part of the territory of either of these counties can be cut off to form a new county without a violation of the Constitution, for, as 640 acres make a square mile, 400 square miles equal 256,000 acres.

But we do not rest our judgment here, for, while the public surveys are presumptively correct, they may be shown to be incorrect, The Constitution recognizes the existing counties of the State. It confers upon them the right to remain in area not less than 400 square miles. They are quasi corporations, they may sue and be sued. They have certain public burdens to bear. When part of their territory is cut off, these burdens fall more heavily upon the remaining territory. The rights of these corporations which are guarantied them by the Constitution are as sacred as any other rights secured by that instrument to other corporations or private persons. The Legislature, in the creation of new counties, is simply an agency, with well defined restrictions upon its powers. If it acts in a case where it has no power to act, its act, like that of any other agent beyond the scope of his power, is void. The county whose rights are affected may complain, and so may any taxpayer who is prejudiced, for the taxpayers have a right to insist

upon the constitutional protection against the increased burdens which the formation of the new county will entail. It is the province of the courts to protect private rights under the Constitution. Constitutional guaranties would amount to nothing if there was no way to protect them. The court will not adjudge bad a legislative act on doubtful evidence, but, where it is plain that the Constitution has been violated, it is the duty of the court to say what the law is, and protect private rights. Otherwise, the Constitution may be disregarded, and power may be exercised by the Legislature in a case where, under the Constitution, it is without power to act at all, and those whose rights are thus destroyed will be left without remedy. This question was fully considered in Cheaney v. Hooser (decied in the year 1848) 48 Ky., 330, the court holding that the discretion of deciding on all legislative measures is in the Legislature itself, except where the Constitution limits the power of the Legislature, but that a statute is void if in violation of the constitutional limitation on the power of the Legislature; and in that case parol evidence was received to show that private property was taken for public purposes, under an act of the Legislature, without just compensation. This case was followed in Covington v. Southgate, 54 Ky., 492; Elkton v. Gill's Trustees, 94 Ky., 138, 14 R., 755, 21 S. W., 579, and a number of other cases. There can be no sound reason why the same rule should not apply in the cases of violation of any other constitutional restriction on the power of the Legislature to the prejudice of private rights. By the terms of the Constitution the following conditions must be complied with before a new county may be formed: (1) No county from which any part of the territory is taken must be reduced to less area than

400 square miles. (2) The new county must be of not less area than 400 square miles. (3). The boundary line of the new county must not pass within less than ten miles of the county seat of any county from which a portion of its territory is taken. (4) No county from which any part of the territory is taken shall be reduced to less that 12,000 inhabitants. (5) The new county must contain not less than 12,000 inhabitants. If any of these conditions are wanting, the act is in violation of the Constitution, and void. The circuit court erred in refusing to allow the petition of Carter county to be filed. He also erred in sustaining the demurrer to the plaintiff's petition.

Judgment reversed, and cause remanded for further proceedings not inconsistent with this opinion.

Whole court sitting.

Petition for extension of opinion overruled.