# Wheeling.

IRVIN LUSHER vs. THOMAS SCITES et al.

January Term, 1870.

1. The subject of creating new counties belongs to the legislature alone, by the provisions of the constitution. To exercise the power thus conferred the legislature must inform itself of the existence of the facts (as to area, population, &c.,) prerequisite to enable it to act on the subject. How it shall do so, and on what evidence, the legislature alone must determine; and when so determined, it must conclude further inquiry by all other departments of the government. And the final action terminating in an act of legislation in due form, must of necessity presuppose and determine all the facts prerequisite to the enactment.

2. The courts cannot go into an inquiry as to the truth or falsity of facts upon which an act of the legislature is predicated, where the latter has sole jurisdiction of the subject.

3. The existence of Lincoln county held to be a fact.

This cause arose in Cabell county. The original bill was filed and injunction obtained in September, 1868; the amended bill was filed in May, 1869. The appellant, Lusher, sought to restrain the collection of taxes assessed against him by the officers of the county of Lincoln. The appellees were tax collectors. The opinion of the President contains a substantial statement of the points at issue.

Hon. James H. Ferguson, judge of the circuit court of Cabell, on the trial of the cause.

*Lucien C. Ricketts* for the appellants.

*Tomlinson* and *Stanton & Allison* for the appellees.

BROWN, *President.*

So much of the opinion of the circuit court as I approve, I have adopted.

This suit was brought by the plaintiff to restrain the collection of certain county and township taxes assessed and levied upon his real and personal estate, in the township of Sheridan, and county of Lincoln, upon the ground that the act creating the said county, and the subsequent acts amending the same, are unconstitutional and void, and an injunction was obtained and perfected by the plaintiff restraining the collection of these taxes until the further order of the circuit court. The county of Lincoln was created by an act of the legislature of this State, passed on the 23d day of February, 1867, out of parts of the counties of Cabell, Putnam, Kanawha and Boone; and by subsequent acts, some material changes have been made in its boundary lines, and considerable additions made to its territory and population.

It is averred, both in the original and amended bills, that at the time of the creation of the said county of Lincoln, it did not contain within its boundary lines either four hundred square miles of territory or four thousand white population; and that by its creation the county of Cabell was reduced below the area of four hundred square miles of territory. It is averred in the amended bill that by the act passed March 3d, 1868, sufficient territory was added to the county of Lincoln to give it an area of four hundred square miles, but that its white population was still below four thousand, and the county of Cabell was, by that act, still further reduced in territory. It is further averred that by the act passed February 26th, 1869, "additional population and territory was added to the counties of Lincoln and Cabell, but that the said county of Cabell still contains less than four hundred square miles of territory." There are other allegations in both bills on this subject, but these are all that are necessary to be noticed in the decision of the case.

The defendants filed a demurrer to the bill and amended

bill, and asked to have the injunction dissolved and both bills dismissed, on the ground that the circuit court had no jurisdiction, either of the parties or of the subject matter of the suit.

Upon the first point raised, I am clearly of opinion that if the plaintiff is entitled to the relief prayed for in his bill and amended bill, his suit is properly brought in the circuit court of Cabell. He alleges that, at the time of the passage of the act creating the county of Lincoln, he was a resident and freeholder of that part of the county of Cabell which was included within the boundary lines of the said county of Lincoln, and that he still resides upon his freehold at the same place he then resided. If, then, the act creating the county of Lincoln, and the several acts amending the same, are all unconstitutional and void, there is no county of Lincoln, and the plaintiff is still a citizen and resident of Cabell county, and entitled to sue as such in that county. The reasons for this opinion might be amplified, but it is unnecessary.

The important question in the case is, the constitutionality of the acts in question.

The legislative power is an attribute of sovereignty, and the exercise of that attribute is vested by the people of the State in the Senate and House of Delegates. Constitution, art. 4, sec. 1.

The creation of a new county is an exercise of legislative power. It is, therefore, legitimate legislation, and within the scope of legislative power to make new counties; and the only limitation on the power in the legislature, is to be sought for in the constitution; and the only limitation there to be found, applicable to this case, is the prohibition contained in section 12 of article VII of the constitution, which provides that, "No new county shall be formed having an area of less than four hundred square miles; or, if another county be thereby reduced below that area; or, if any territory be thereby taken from a county containing less than four hundred square miles. And no new county shall be

formed containing a white population of less than four thousand; or, if the white population of another county be thereby reduced below that number; or, if any county containing less than four thousand white inhabitants be thereby reduced in area," &c.

The power to form new counties, it is conceded, belongs to the legislature alone under the constitution, but before this power can be rightfully exercised, it must be made to appear affirmatively: 1. That the proposed new county does contain an area of at least four hundred square miles. 2. That no other county is thereby reduced below that area. 3. That no territory is thereby taken from any county containing less than four hundred square miles. 4. That the proposed new county contains at least four thousand white population. 5. That the white population of no other county is thereby reduced below four thousand; and 6. That no county containing less than four thousand white inhabitants is thereby reduced in area. When all these facts are made to appear to the satisfaction of the legislature, then, and not till then, an act creating the proposed new county may be passed. The legal presumption therefore is, that when the act creating the county of Lincoln was passed, all these facts had been proved to the satisfaction of the legislature, otherwise that body would not and could not have passed the act. All its members were sworn to support the constitution of the State, and it is not to be presumed that they would violate their oaths of office by passing the act in question, without the proof necessary to enable them to do so.

Not only does the subject of making new counties belong to the legislature, but it belongs to no other department of the government. To exercise the power, the legislature must inform itself of the existence of the facts prerequisite to enable it to act on the subject. How it shall do so, and on what evidence, the legislature alone must determine; and when so determined, it must conclude further inquiry by all other departments of the government; and the final

action terminating in an act of legislation in due form, must of necessity presuppose and determine all the facts prerequisite to the enactment; and that too, as fully and as effectually as a final judgment of a competent judicial tribunal of general jurisdiction would do in like case.

My opinion, therefore, is, that the passage of the act creating the county of Lincoln, and the act amending the same and re-enacting the first section thereof, passed February 26th, 1869, are in law, solemn affirmations of record by the only tribunal having jurisdiction in the case; that all the constitutional requirements had been and were complied with; that the said county of Lincoln had the territory and population required by the constitution, and that no other county was, by the creation thereof, reduced below the amount of territory or population required by the constitution. And the question now is: has this court power to go behind these acts and try the question as to whether these affirmations are true or false? In order to a right understanding of this question, it is necessary to ascertain the force and effect of an act of the legislature as evidence. Phillips, in his work on evidence, (Vol. 1, p. 316), speaking of acts of parliament, says: "Records are the memorials of the proceedings of the legislature and of the King's courts of justice, preserved in rolls of parchment; and they are considered of such authority that no evidence is allowed to contradict them." And on page 317, he says: "The first sort of records to be considered, are acts of parliament; and these, says Chief B. Gilbert, are the highest and most absolute [proof." See, also on this subject, 1 Starkie on Evidence, pages 231, 233. On page 233 this author says: "The recital in the preamble of a public act of parliament of a public fact, is evidence to prove the existence of that fact. Where an information for a libel alleged that outrages had been committed in particular parts of the kingdom, the preamble of a public act reciting the fact, was held to be admissible evidence to support the averment; for every subject is in contemplation of law, privy to the making of

such an act." See, also, 1 Phillips on Evidence, page 318.

The law, as thus laid down in regard to acts of parliament, applies with equal force to acts of the legislature of this State. If one cannot be contradicted by evidence, the other cannot, for no reason can be urged in favor of the absolute verity of the one that does not apply with equal force to the other. The act creating the county of Lincoln, and the several acts amending the same, are all public acts, and as Judge, I am bound to take judicial notice of these and other acts of the legislature in relation to that county, and of the courts held therein from time to time, as in other counties of the State. My opinion, therefore, is, that no evidence can be admitted in court to contradict the facts affirmed by the passage of those acts. *De Camp* vs. *Eveland*, 19 Barb., 81, and 19 N. Y. Rep., 41, *Runnay* vs. *People*.

In order to fortify this conclusion, it may be well to look at the consequences which might and would follow if this were not so. It is averred in the amended bill, and admitted to be true, that in pursuance of the act creating the county of Lincoln, the said county "was organized, and all the county and township officers were elected and appointed therein, and after being qualified entered upon the duties of their respective offices; that the circuit courts have been regularly held in said county, and that actions, suits and other legal proceedings, both civil and criminal, have been commenced and prosecuted in said courts, and judgments, decrees, and sentences have been given, made and executed therein; that the board of supervisors of said county have, in each year since the creation thereof, laid and collected the county levies, entered into contracts, contracted debts, and exercised all other powers conferred by law upon such boards; that they have built a jail in said county at a cost of over five thousand dollars, the most of which sum still remains unpaid to the contractor; and unless this court shall interfere to prevent it, the tax-payers residing in the said county will be taxed to pay the same." Now if the circuit court of Cabell county, decide the act creating the

county of Lincoln, and the acts amending the same, are all unconstitutional and void, for the reasons stated in the bill and amended bill, and that there is therefore no such county, then what becomes of all the proceedings of the courts held by the same officer as judge of the circuit court of Lincoln county; of the judgments and decrees given and rendered; of the money that has been collected under them; of the title to real property which has been sold and conveyed under such decrees; and of the fines and punishments imposed for violations of the law in that county? And what becomes of the officers who have been executing and enforcing these judgments, decrees, and sentences, and who have been levying and collecting taxes and levies in that county? And what is to become of the contractor who has built the jail of that county, and not received his pay; and to prevent which payment the plaintiff in this case invokes the aid of this court? Upon these grave inquiries I cannot better express myself than by a reference to the case of *Luther* vs. *Borden*, decided by the supreme court of the United States, and reported in Vol. 7 of Howard's Reports. This was an action of trespass brought by *Luther* vs. *Borden and others*, in the circuit court of the United States for the district of Rhode Island, for breaking and entering the plaintiff's house. The plaintiff was a supporter of the Dorr government, and the defendants were supporters of the old Charter government. Dorr and his adherents claimed that the Charter government had been displaced by the adoption of a constitution by a majority of the legal voters of the State, and in support of that claim, they made war upon the Charter government, and that government, to defend itself, declared the State to be under martial law; and the trespass complained of was committed by the defendants while in the military service of the Charter government, and under its orders. The main question raised by the plaintiff in the case was, which was the rightful government, the Charter or the Dorr? And in delivering the opinion of the court, Judge Taney says: "The plaintiff

contends that the Charter government was displaced, and ceased to have any lawful power after the organization of May, 1842, of the government which he supported; and although that government never was able to exercise any authority in the State, nor to command obedience to its laws or its officers, yet he insists that it was the lawful government, upon the ground that it was ratified by a large majority of the male people of the State of the age of twenty-one and upwards; and also by a large majority of those who were then entitled to vote for general officers under the then existing laws of the State. The fact that it was so ratified was not admitted, and at the trial in the circuit court, he offered to prove it by the production of the original ballots, and the original registers of the persons voting, verified by the oaths of the several moderators and clerks of the meetings, and by the testimony of all the persons so voting, and by the said constitution; and also offered in evidence for the same purpose that part of the census of the United States for the year 1840, which applies to Rhode Island, and a certificate of the Secretary of State of the Charter government, showing the number of votes polled by the freemen of the State for the ten years then last past. The circuit court rejected this evidence, and instructed the jury that the Charter government and laws under which the defendants acted were, at the time the trespass is alleged to have been committed, in full force and effect as the form of government and paramount law of the State, and constituted a justification of the acts of the defendants, as set forth in their pleas. It is this opinion of the circuit court that we are now called upon to review. It is set forth more at large in the exception, but it is in substance as above stated; and the question presented is certainly a very serious one. For if this court is authorized to enter upon this inquiry, as proposed by the plaintiff, and it should be decided that the Charter government had no legal existence during the period of time above mentioned, if it had been annulled by the adoption of the opposing government, then the laws

passed by its legislature during that time were nullities; its taxes wrongfully collected; its salaries and compensation to its officers illegally paid; its public accounts improperly settled; and the judgments and sentences of its courts, in civil and criminal cases, null and void, and the officers who carried their decisions into operation answerable as trespassers, if not, in some cases, as criminals. When the decision of this court might lead to such results, it becomes its duty to examine very carefully its own powers before it undertakes to exercise jurisdiction." This case, though not strictly in point, is very analagous to the one under consideration, and the reasoning of the court applies with great force to the decision asked for by the appellant in this case. In the case above referred to, the court decided that the question as to which was the rightful government, was a political and not a judicial question, and, "That it rested with the political power to decide whether the Charter government had been displaced or not; and when that decision was made, the judicial department would be bound to take notice of it as the paramount law of the State, without the aid of oral evidence or the examination of witnesses," &c. For the opinion of the court on this point, see the volume above referred to, pp. 7 to 11, and 23 to 26.

On page 9, Judge Taney says: "The question as to the majority is a question of fact. It depends upon the testimony of witnesses, and if the testimony offered by the plaintiff had been received, the defendants had the right to offer evidence to rebut it," &c.; and on page ten he says: "In one case a jury might find that the constitution which the plaintiff supported was adopted by a majority of the citizens of the State, or of the voters entitled to vote by the existing law; another jury, in another case, might find otherwise. And as a verdict is not evidence, in a suit between different parties, if the courts of the United States have the jurisdiction contended for by the plaintiff, the question whether the acts done under the Charter government during the period in contest, are valid or not, must always remain

unsettled and open to dispute." And so in this case, the amount of territory and population in the county of Lincoln, and of each of the counties from which it is taken, is a question of fact to be determined, if the circuit court had jurisdiction, by the evidence of witnesses.

Now, let us suppose by way of illustration, that a citizen and tax-payer of that part of Lincoln county taken from the county of Kanawha, brings a suit similar to this in the circuit court of Kanawha county, to restrain the collection of his taxes, on the ground that the act creating the county and the other acts in question are void, for the reason that the county of Cabell is thereby reduced below the area of four hundred square miles. The county of Kanawha is not in the Cabell circuit; and suppose that in one suit it is proved that the county of Cabell is reduced below the area of four hundred square miles by the creation of Lincoln county, and in the other that it is not, The result would be that the Cabell court would decide the question one way, and the circuit court of Kanawha another way; or in other words, one court would decide that these acts were constitutional, and the other that they were unconstitutional, according to the facts in each case. Now, which of these decisions would be binding? both being made in exact accordance with the facts proved therein.

Again, the constitution, Art. XI, sec. 5, provides that, "No act to incorporate any bank of circulation or internal improvement company, or to confer additional privileges on the same, shall be passed, unless public notice of the intended application for such act be given under such regulations as shall be prescribed by law." On the 24th day of October, 1863, the legislature passed an act prescribing how the notice provided for in the constitution should be posted and published. Since that time several acts of the character requiring such notice to be given have been passed by the legislature, and in some cases the companies have been organized, the stock subscribed, large amounts of money have been expended and large liabilities incurred. Now,

can it be that at some uncertain time in the future some mischievous person may go into the courts and raise the question as to whether the notice required by the constitution and law was given before the passage of the act? The law provides no mode nor means of preserving the evidence of such notice, no record is made of it, nor of its posting and publication, nor how the facts are to be proved or brought to the knowledge of the legislature or the courts; a mere fugitive notice disappearing with the newspaper containing it. And if, in such case, no one can be found to prove that such notice was given in legal form, can it be possible that the act incorporating the company is to be declared unconstitutional and void, and the fortunes of its stockholders wrecked and destroyed? I think not. My opinion, therefore, is, that the existence of Lincoln county under the constitution, is a political and not a judicial question. And as that county is recognized by every branch of the political department of the government, the court is bound thereby, and consequently has no jurisdiction of the subject matter of this suit. For these reasons the demurrer of the defendants was properly sustained, the injunction dissolved, and the bill and amended bill dismissed.

I think, therefore, that the decree of the circuit court should be affirmed with costs and damages to the appellees.

The other judges concurred with the President.

DECREE AFFIRMED.