GREENE COUNTY *v.* CLAY COUNTY.

Opinion delivered July 8, 1918.

1. COUNTIES—REDUCTION OF AREA—VALIDITY OF STATUTE.—Under Const. 1874, art. 13, § 1, providing that "no county now established shall be reduced to an area of less than six hundred square miles nor to less than five thousand inhabitants," a statute reducing the area of a county may not be declared void by the courts upon proof *aliunde* that the attempted change of boundaries reduces the area of the county to less than 600 square miles.

2.  EVIDENCE—JUDICIAL NOTICE—GEOGRAPHICAL FACTS.—The courts may take judicial notice of the plats of public surveys and of the general system of government surveys with base lines, meridians and ranges, and the relative positions of the sections in the township, and also the principal geographical features of the State, and the general location and course of rivers.

3.  SAME—JUDICIAL NOTICE—GEOGRAPHICAL FACTS.—While the courts take notice of the plats of public surveys, they do not take notice of the condition of the land disclosed on the plats, nor the extent of the area embraced therein except as disclosed by the plats themselves.

4.  COUNTIES—REDUCTION OF AREA—VALIDITY OF STATUTE—EVIDENCE.— Acts 1895, page 244, detaching a township from Greene County and attaching it to Clay County, can not be held unconstitutional as reducing Greene County below the constitutional limit of six hundred square miles, inasmuch as the public surveys in existence at the time of passage of such act did not show the area of Greene County, the rule being that when there is a question of fact to be ascertained by the Legislature outside of those matters of which both courts and law makers must take cognizance, the courts can not inquire into those facts for the purpose of overturning legislation.

Appeal from Greene Chancery Court; *Archer Wheatley;* Chancellor; affirmed.

*R. P. Taylor* and *Huddleston, Fuhr & Futrell,* for appellants.

1.  The act reduced the territory of Greene County to less than 600 square miles and is unconstitutional and void. The suit was properly brought and in the names of the proper parties. Const. Art. 13, § 1. Proof *aliunde* was admissible. The section is self-executing and mandatory and the infraction thereof is addressed to the judiciary. 34 Ark. 224; 27 *Id.* 202; 33 *Id.* 497; 35 *Id.* 56; 80 S. W. 443.

See also 17 R. C. L. 972, § 345. Also cite many cases as to usurpation, laches, limitation, etc., but these points are not decided in the opinion.

The court takes judicial knowledge of the fact that since the act Greene County has less than 600 miles of territory. The area does not have to be proved, but the field notes, plats, maps, etc., show this.

*G. B. Oliver,* for appellees.

1.   The Legislature settled the question by its act and that is binding on the courts.   28 Ark. 378; 4 W. Va. 11; Cooley on Const. Law, 227, 257, 236, 254, etc.; 44 Ark. 536; 76 *Id.* 197; 48 *Id.* 370.

2.   The presumption is that the Legislature found the necessary facts to uphold the act.   *Supra;* 103 Ark. 127, 529; 97 *Id.* 473; 48 *Id.* 370; 59 *Id.* 513, and many others.

3.   Argue the questions of laches, acquiescence, usurpation, limitation, etc., citing many cases.

McCULLOCH, C. J.   The General Assembly of 1895 enacted a statute detaching the territory constituting Blue Cane township from Greene County and attaching the same to Clay County as a part thereof, the area being properly described by metes and bounds in the statute, which provided also that the township officers should continue in office until their successors were elected and qualified, and that Clay County should be liable to Greene County "for the *pro rata* amount of the indebtedness of said Greene County existing at the time of the passage of this act equal in proportion to the amount of taxable property of the territory detached."   Acts 1895, p. 244.

The present suit, which is one instituted in the chancery court of Clay County on behalf of Greene County against Clay County and its acting officers, challenges the constitutionality of the act transferring the territory in question from one county to another on the ground that it leaves Greene County with less than 600 square miles of territory, which is prohibited by sec. 1 of Art. XIII of the constitution of 1874 providing that "no county now established shall be reduced to an area of less than six hundred square miles nor to less than five thousand inhabitants; nor shall any new county be established with less than six hundred square miles and five thousand inhabitants."

At the hearing of the cause testimony was introduced tending to show the actual number of square miles left in

Greene County exclusive of the detached township, but the defendants expressly reserved the right to object to the consideration of such testimony on the ground that the statute is conclusive on the question of the proper exercise of legislative power, and that such testimony was not admissible. The chancellor rendered a decree dismissing the complaint, and plaintiffs have appealed.

The question is squarely presented whether or not a statute which reduced the area of a county by a change in the boundary lines should be declared void by the courts upon proof *aliunde* that the attempted change of boundaries reduces the area of the county to less than 600 square miles.

There are two views of the question: One that when the constitutionality of such a statute is challenged it becomes a judicial question for the courts to determine, from legal evidence adduced, whether or not the facts exist upon which the power of the Legislature to act is based; and the other view is that the determination of the facts upon which the power of the Legislature to enact the statute exists is a legislative question, and that the courts must respect that determination unless the statute is void on its face.

The authorities bearing directly on the question are not as numerous as might be expected and they are not in harmony. One of the cases which holds to the first view stated above is *Zimmerman* v. *Brooks,* 118 Ky. 85, 80 S. W. 443, where the subject is thoroughly discussed, and the authorities reviewed, and the court reached the conclusion that it is a judicial question ''for the courts to determine whether the General Assembly, in creating a new county, has violated constitutional section 63, providing that no county shall be created by the General Assembly which will reduce the county or counties, or either of them, from which it shall be taken, to less area than 400 square miles, nor shall any county be formed of less area.''

Another leading case on the subject which reached the opposite conclusion is *Lusher* v. *Scites,* 4 W. Va. 11, where the authorities are also discussed at length and the court announced the following rule with respect to the conclusiveness of the exercise of legislative power:

"To exercise the power thus conferred the Legislature must inform itself of the existence of the facts prerequisite to enable it to act on the subject. How it shall do so, and on what evidence, the Legislature alone must determine; and when so determined, it must conclude fur ther inquiry by all other departments of the government. And the final action terminating in an act of legislation in due form, must of necessity presuppose and determine all the facts prerequisite to the enactment."

We must, however, regard the question as settled by the decision of this court in the case of *State* v. *Dorsey County,* 28 Ark. 378, which approved the doctrine of the West Virginia case cited above, and announced the rule that "when the constitutionality of an act of the Legislature creating a new county is questioned because its area is less than the constitutional requirement, or that some county or counties out of which it has been organized has been reduced below six hundred square miles, to determine this fact, the courts can not look beyond the act itself, or some other official record of like grade and character, or official survey or maps of which they are bound to take judicial notice."

This was but another way of saying that a legislative determination of any disputed fact is conclusive upon the courts in any inquiry on that subject unless the act shows on its face that the facts necessary to call the power into exercise do not exist, for the statute must be read and considered by the courts in the light of facts of which they have judicial knowledge, and when it is thus disclosed that the essential facts do not exist then the courts must declare the statute void. An appropriate example of this rule would be that where the act itself discloses the exterior boundaries of the county by courses

and distances in such a way that the extent of the area is a mere matter of mathematical calculation, then the statute would be void on its face if the extent of the area thus ascertained is less than the requirements of the constitution.

This case then brings us to the question whether there are facts of which we take judicial notice in connection with the boundaries of Greene County as set forth in the statute originally creating it and the several statutes changing those boundaries, which show that the transfer of territory in this instance reduced the area of Greene County to less than 600 square miles, and if it is thus seen that it does reduce the area of the county to that extent it is our duty to declare the act unconstitutional.

It is settled by our decisions that the courts may take judicial notice of the plats of public surveys and of the general system of government surveys with base lines, meridians and ranges, and the relative positions of the sections in the township, and also the principal geographical features of the State and general location and course of rivers. *State* v. *Dorsey County, supra; Bittle* v. *Stuart,* 34 Ark. 224; *Little* v. *Williams,* 88 Ark. 37; *Stephens* v. *Stephens,* 108 Ark. 53; *Beck* v. *Anderson-Tully Co.,* 113 Ark. 316; *McCall* v. *North Pine Bluff Realty Co.,* 125 Ark. 553.

We take notice of the plats themselves, but not of the condition of the land disclosed on the plats nor the extent of the indicated area except what the plats themselves show. In other words, we can not take knowledge of the extent of any given area. *McCall* v. *North Pine Bluff Realty Co., supra.*

Greene County was created under the territorial government by a statute approved November 5, 1833, and the territory comprising the county was described as "all that portion of the county of Lawrence, lying east of a line beginning where the southern boundary line of said county of Lawrence crosses the River Cache, thence up

the middle of the main channel of said Cache, to the place known as the three forks of Cache, thence a due north course till it intersects the constitutional line dividing the State of Missouri from the Territory of Arkansas." Acts of 1833, p. 35.

A portion of the original territory of the county was detached in the creation of Craighead County by the act of February 19, 1859, and again by the act creating Clay County in the year 1873. The St. Francis River, where it forms the boundary line between Missouri and Arkansas, is the eastern boundary line of Greene County, and it is conceded to be a fact that the area between the meandered line of St. Francis River and the middle thread of the stream has never been ascertained by any official survey up to the time of the passage of this statute. It is also conceded that there were large bodies of unsurveyed lands in the county at the time this statute was passed. We must, however, determine the validity of the statute as of the time it was enacted, and any official survey made since that time could not be determinative of the validity of the statute. It is easily seen that the ascertainment of the extent of the area constituting Greene County is not a mere matter of mathematical computation based either upon the exterior boundaries described in the statute fixing them nor of the plats which we notice judicially. In short, it was, when the statute was passed, merely a question of fact to determine the extent of this area to which the county was to be reduced and the only question we have here remaining is whether that question of fact should be inquired into by the courts for the purpose of upholding or overturning the statute.

That question is, we think, clearly settled by the decision of this court in the Dorsey County case, *supra,* and a majority of the court are of the opinion that the conclusion there reached is correct in principle, for where a power is committed to the Legislature to exercise under a given state of facts it is necessarily implied that the Legislature must first ascertain the existence of those

facts, and that its determination .is conclusive upon the courts. Any other rule would lead to the utmost confusion in the efforts of the courts to review legislative action upon the ascertainment of the existence of facts which may or may not appear to be conclusive. The only sound rule is, we think, to say that when there is a question of fact to be ascertained outside of those things which both courts and lawmakers must take cognizance of, the courts can not inquire into those facts for the purpose of overturning legislative action.

It follows from what we have said that the chancery court was correct in refusing to declare the statute void.

Decree affirmed.

WOOD and HART, JJ., dissent.