HELENA WATER CO. *v.* HELENA.

Opinion delivered November 24, 1919.

1. STATUTES—ENACTMENT—PRESUMPTION AS TO REGULARITY.—Where an act was duly signed by the Governor, deposited with the Secretary of State and published as a law, it will be presumed that every requirement was complied with in its passage.

2. SAME—SAME—SAME.—This presumption is not conclusive, and the courts, in determining the validity of a statute, may look to the journals and other records of the Legislature to ascertain whether or not the constitutional requirements with respect to the passage of bills have been observed.

3. SAME—SAME—SAME.—Mere silence of the legislative records concerning the successive steps in the passage of a bill, except as to matters of which the Constitution requires a record in the journals, is not sufficient to overcome the presumption of regularity in the passage of a bill arising from the enrolled copy which has been signed by the Governor and deposited with the Secretary of State; and evidence outside the record is not admissible to overcome the presumption.

4. SAME—SAME—SAME.—A bill, as introduced was amended fifteen times, which fifteen amendments were engrossed into the original bill, but the enrolled statute showed only thirteen of the fifteen amendments. The bill thus enrolled was signed by the Governor, and its passage endorsed by the Secretary of State. *Held,* the presumption arising from the enrolled statute is not overcome

by the recitals of the Senate journal that the two amendments in question were adopted, but the presumption will be indulged that the Legislature (Senate) receded from those amendments before the bill was finally passed.

5. CORPORATION COMMISSION—CREATION—VALIDITY.—Act 571 of 1919, abolishing the Railroad Commission, creating the Corporation Commission, and transferring the powers of the former to the latter, *held* valid.

Appeal from Phillips Chancery Court; *A. L. Hutchins*, Chancellor; reversed and dismissed.

*Bevens & Mundt* and *Carmichael & Brooks*, for appellant Helena Water Company.

The act was constitutionally passed and does not impair the obligation of a contract. 204 S. W. 497; 163 *Id.* 585; 168 *Id.* 1156-1159; 204 *Id.* 386, 1074; 207 *Id.* 799. The city had no vested rights.. The Helena Water Company was only bound to furnish hydrants at certain rentals. Where not constitutionally inhibited, the power to fix rates is a legislative faculty which is delegable to a public service commission. 207 S. W. 299. The doctrine of this case has often been approved. 225 Fed. 920; 206 U. S. 496; 194 *Id.* 517; 246 *Id.* 178; 248 *Id.* 429; 244 *Id.* 13; 205 S. W. 36; 192 S. W. 958; 192 *Id.* 460; 209 *Id.* 552; 105 Atl. 132; 196 U. S. 539.

*T. W. Campbell*, for the Arkansas Corporation Commission.

1. Act 571, Acts 1919, was constitutionally passed. The presumption is in favor of its validity. 12 Ark. 321; 27 *Id.* 266; 39 *Id.* 353; 40 *Id.* 290; 54 *Id.* 513; 77 *Id.* 250. An act duly signed by the Governor and deposited with the Secretary of State and duly published as a law will be presumed to have been duly passed. 51 Ark. 359; 90 *Id.* 174; *Ib.* 600; 103 *Id.* 109; 110 *Id.* 269. The act should be sustained. 44 Ark. 536; 33 *Id.* 17; 40 *Id.* 200; 131 *Id.* 291; 214 S. W. 2. See also, in point, 40 Ark. 200; 131 *Id.* 291. Mere silence of the journals does not overcome the presumption of the act's due passage. *Supra;* *Perry* v. *State*, 139 Ark. 227.

2. The commission may grant indeterminate permits authorizing utilities to operate under terms other than those specified in municipal franchises existing at the time of the creation of said commission. 214 S. W. 71; 207 *Id.* 799; 121 N. E. 777; 117 *Id.* 915; *City of Pawhuska* v. *Pawhuska Oil & Gas Co.;* Sup. Ct. Adv. op. No. 17, p. 663; 173 Pac. 556; 177 *Id.* 361; P. U. R. 1919 D, 422; 159 Pac. 133; 105 Atl. 109; 135 N. W. 131; 161 Pac. 391; 130 N. W. 530; *City of Memphis* v. *Enloe,* ms. op., Sup. Court of Tenn., July 3, 1919. These cases show that the fixing of rates and directing the operation of public utilities is a matter within the *police power* of the State, and the State is free to exercise this police power in such way as the Legislature may direct or determine and that the Arkansas Corporation Commission, having been, by the statute creating it, empowered to act in such matters for the State, is free to fix the rates and direct the operations of public utilities, regardless of the provisions of municipal franchises and the chancellor erred in granting the injunction against appellants. Cases *supra.*

*Fink & Dinning, P. R. Andrews* and *J. G. Burke,* for appellee.

1. No law can be enacted unless both houses pass the same bill. The act No. 571, Acts 1919, is unconstitutional and void because the Senate passed a different bill from the one passed by the House. This is affirmatively shown by the journal of the Senate. Art. 5, sec. 21. Const. 1874. The journals of both houses show affirmatively that a majority of the Senate voted for one bill and the majority of the House for another. The courts may look beyond the enrollment of an act to the journals to see if the act was constitutionally passed. 44 Ark. 536; 40 *Id.* 200; 72 *Id.* 565; 90 *Id.* 174; 103 *Id.* 109. The records of the Senate and House are the *best* evidence, 132 Ark. 240, though the records required by section 3351, Kirby's Digest, to be deposited with the Secretary of State are evidence of the facts which they testify to. See also 72 Ark. 565. The journals are not only the *best* but the

sole and exclusive evidence of the facts in this case that the Senate passed a bill entirely different from the one passed by the House and deposited with the Secretary of State. 72 Ark. 565; 103 *Id.* 109, a case identical with this; 41 Ark. 471-5; 110 *Id.* 268; 103 *Id.* 109; 27 Ark. 266; Art. 5, sec. 11, Const. 1874; 33 Ark. 25.

2. The act approved by the Governor was not the same act passed by the Senate. 81 Atl. 170; 68 N. W. 759-762; 45 N. W. 493-6.

3. Amendments adopted by one House of the Legislature must be concurred in by the other or the bill will be invalid and of no force and effect. 72 Ark. 565; 41 *Id.* 471; 114 N. W. 767; 80 *Id.* 499; 29 So. 700.

4. The presumption of the validity of an act does not apply to this case because the Legislature failed to comply with the provisions of our Constitution and the presumption is overcome and does not apply, because the act here was not properly enacted by both branches of the Legislature as required by the Constitution. 103 Ark. 109; 14 Ill. 297; 110 Ark. 280 dissenting opinion. The facts here are materially different from those in 40 Ark. 200; 131 *Id.* 291 and 214 S. W. 2.

5. The act is void because it attempts to delegate to the commission therein created powers and duties which are not permitted by article 17 of the Constitution.

Section 10 of article 17 is amended by amendment No. 4. When the Constitution has spoken, the reserve powers of the legislative branch are thereby limited and must accord with the supreme law of the land. Pursuant to vested authority by this amendment, the Legislature did create a Railroad Commission and vested it with such powers as were provided for by the Constitution. By act 571 the name of the commission was changed to Arkansas Corporation Commission and its powers so enlarged as to embrace supervision of all public service corporations. Its powers and duties are defined, and the words are not ambiguous, and the Legislature has no right to invest it with powers and impose on it duties

that are in no wise related to powers and duties which it is authorized to discharge by the enactment which provided for its creation. 27 Ark. 176; 89 *Id.* 459; 90 *Id.* 10-15; 134 *Id.* 463; 49 *Id.* 518.

McCULLOCH, C. J.   This action was instituted by the city of Helena attacking the validity of act No. 571 of the General Assembly of 1919 (regular session), creating the Arkansas Corporation Commission and defining its duties, and abolishing the Railroad Commission and transferring its powers and duties to said Arkansas Corporation Commission.

There are two points of attack involved in the action: (1) That the statute was not legally enacted by the two houses of the General Assembly, in that the same bill was not voted on by the two houses; and (2) that it is not within the power of the General Assembly to abolish the Railroad Commission or to transfer its powers and duties to another commission.

The bill for the enactment of the statute originated in the Senate as "Bill No. 133" and on second reading seventeen amendments were offered, fifteen of which, according to the journal entries, were adopted, and the bill as thus amended was ordered engrossed.   The engrossing committee reported the bill on February 24, 1919, as properly engrossed, but the engrossed bill which we find on file in the office of the Secretary of State does not contain two of the amendments which, according to the recitals of the journal, has been adopted.   One of these was an amendment to section 7 of the bill adding a provision, in substance, that the commission was empowered, when deemed proper, to require the filing of an additional bond by a corporation whose schedule of increased rates for public service has been temporarily suspended by the commission.   The other amendment was to section 31 of the bill providing that the Railroad Commission should be abolished on January 1, 1921, and perform all the specified duties of the Arkansas Corporation Commission until that date, instead of the original provision of the bill to the effect that the Railroad Commission

should be abolished on April 1, 1919, and its powers and duties then transferred to the new commission. The journal of the Senate does not affirmatively show that the Senate at any time receded from either of those two amendments, and it recites the passage of the bill by the Senate February 25, 1919, on yea and nay vote duly recorded. The House journal recites the receipt of the bill on February 25, the reading of it the first and second times February 28, on suspension of the rules, and the third reading and final passage on March 7, 1919. Nothing appears on the journal of the House concerning any amendments. The bill as enrolled by the proper committee of the Senate and signed by the presiding officers of the two houses and by the Governor, does not contain those two amendments.

(1) It is settled by an unbroken line of decisions of this court that "where an act was duly signed by the Governor, deposited with the Secretary of State and published as a law, it will be presumed that every requirement was complied with in its passage. *Glidewell* v. *Martin*, 51 Ark. 559; *Mechanics Building & Loan Association* v. *Coffman*, 110 Ark. 269; *Perry* v. *State*, 139 Ark. 227.

(2) This presumption is not, however, a conclusive one, and the courts, in determining the validity of a statute, may look to the journals and other records of the Legislature to ascertain whether or not the constitutional requirements with respect to the passage of bills have been observed. *Chicot County* v. *Davies*, 40 Ark. 200; *Webster* v. *Little Rock*, 44 Ark. 536; *Rogers* v. *State*, 72 Ark. 565; *Butler* v. *Kavanaugh*, 103 Ark. 109; *Mechanics Building & Loan Association* v. *Coffman, supra.*

(3) Mere silence of the legislative records concerning the successive steps in the passage of a bill, except as to matters of which the Constitution requires a record on the journals, is not sufficient to overcome the presumption of regularity in the passage of a bill arising from the enrolled copy which has been signed by the Governor and deposited with the Secretary of State. *Smithee* v. *Garth*,

33 Ark. 17; *Harrington* v. *White,* 131 Ark. 291; *Perry* v. *State, supra.*

And evidence outside of the record is not admissible to overcome that presumption. *State* v. *Dorsey County,* 28 Ark. 378; *State Fair Association* v. *Hodges,* 120 Ark. 131; *Greene County* v. *Clay County,* 135 Ark. 301.

The question now under consideration was, we think, definitely settled against the contention of the plaintiff, in the recent case of *Perry* v. *State, supra,* where the records of the passage and enrollment of the statute were not materially different from the facts of the instant case. In that case the bill for the statute under consideration originated, as in the present case, in the Senate, and the journal showed an amendement which was duly engrossed by the committee and reported back. The only difference between the facts of the two cases is that in the Perry case the committee engrossed the amendment into a copy of the original bill and the endorsement of the secretary of the Senate showing the final passage of the bill was on the original bill, whereas in the instant case the committee engrossed into the original bill the fifteen amendments now found in the enrolled statute—omitting the two not shown in the enrolled statute—and the endorsement of the secretary showing passage is on the back of the original bill as so engrossed. In discussing the question in that case we said:

"It does not appear affirmatively that the bill, as engrossed, was read a third time and passed. The endorsement appears on the original bill and not on an engrossed bill. After being engrossed, it was within the province and power of the Senate to have ordered the bill placed back on its second reading for amendment and to have receded from the amendment engrossed into the bill, or to have stricken the amendment from the bill, and, should such course have been taken, it would not have been necessary to its validity to have entered these steps concerning the amendment on the journal. The silence of the record in this regard would not conflict with the presumption that such course was pursued by the Senate.

The silence of a legislative journal, on matters not required to be entered on the journal, can not conflict with the presumption of the regularity of the passage of a bill. It is only in matters where the journal does speak, or where it is required to speak, that it could conflict with such presumption. * * * The journals in the instant case only go so far as to show that the amendment was adopted and engrossed in the bill. It does not affirmatively appear that the engrossed bill passed, or that the Senate did not recede from the amendment. Under the rule announced in the cases referred to, the court must indulge the presumption that the Senate did recede from the amendment, and, for that reason, the amendment adopted in the Senate did not appear in the enrolled bill."

(4) So, in adhering to the rule announced in the case just cited, and in applying it to the present case, we must say that the presumption arising from the enrolled statute is not overcome by the recitals of the Senate journal that the two amendments in question were adopted, but on the contrary, we must indulge the presumption that the Senate receded from those amendments before the bill was finally passed. Indeed, the omission of those amendments from the engrossed bill as it now appears in the office of the Secretary of State, and its acceptance by the Senate as thus engrossed, raised the presumption that those amendments were withdrawn or receded from before the bill went to the engrossing committee.

(5) The next question with which we have to deal is whether or not the Legislature exceeded its powers in attempting to abolish the Railroad Commission or to transfer its powers to the newly created Corporation Commission.

The people of the State adopted, in the year 1898, an amendment to the Constitution which reads as follows:

"The General Assembly shall pass laws to correct abuses and prevent unjust discrimination and excessive charges by railroads, canals and turnpike companies for transporting freight and passengers, and shall provide for enforcing such laws by adequate penalties and for-

feitures, and shall provide for the creation of such offices and commissions and vest in them such authority as shall be necessary to carry into effect the powers hereby conferred.'' (Amend. No. 2 to Const.)

The argument in this case is that the amendment to the Constitution restricts the powers of any office or commission created thereunder to those therein enumerated, viz., to the regulation of ''excessive charges by railroads, canals and turnpike companies'' and that it is beyond the authority of the Legislature to impose any further duties on any offices or commissions created for that purpose.

It will be observed that the Constitution does not specify by name the office or commission to be created. It primarily provides for the correction of abuses, unjust discriminations and excessive charges by transportation companies and authorizes the creation of ''such offices and commissions'' and the investment in them of ''such authority as shall be necessary to carry into effect'' that provision. It constituted a command to the law makers to carry out the provision to create such offices or commissions as might be found necessary. It is a grant, not a limitation of power, and the rule of exclusion of those things not expressed does not apply. It is, in other words, the power to correct abuses by transportation corporations, which is conferred by the Constitution, and not the creation of any particular offices or commissions, and the Legislature could, in the first instance, have created the present commission, and conferred on it the enumerated powers and others. The fact the Legislature first created a commission under the name of Railroad Commission did not exhaust its powers in that respect, and the power to create a commission under another name, with the authority enumerated and more, still existed.

We have decided that section 9, article 19, of the Constitution prohibiting the creation of permanent offices was directory to the law makers, so far as concerned a determination that the creation of a temporary office was necessary and that the legislative decision that the office created was temporary and not permanent was conclusive

on the courts.  *Greer* v. *Merchants & Mechanics Bank,* 114 Ark. 212.

It may be that the people adopted Amendment No. 2 under the belief that the constitutional provision referred to above is mandatory and that it was deemed necessary to grant express authority for the creation of offices or a commission to carry out the provisions of the amendment.  Even if that be the case, it does not warrant the interpretation of the language of the amendment that the powers of the commission created were to be restricted to those enumerated.

The conclusion of the majority of the court is, therefore, that the attack on the statute is unfounded.  The decree of the chancery court is reversed, and the cause is dismissed.

WOOD, J., dissents.

HART, J., (dissenting).  On account of our respect for a co-ordinate department of the government, and as well for the opinion of our brother judges and of those who have without question accepted office under the act creating the Arkansas Corporation Commission, Judge Wood and the writer have deemed it proper not merely to voice our dissent on the record on the ground that the act is unconstitutional; but to give our reasons therefor in writing.  It is a judicial saying that the Constitution is the paramount law of the land, and is the fortification within which the people have entrenched themselves for the preservation of their rights and privileges.  In *Rison* v. *Farr,* 24 Ark. 161, it was further said:

"The Constitution fixes limits to the exercise of legislative authority, and prescribes the orbit within which it must move.  In short, the Constitution is the sun around which all legislative, executive and judicial bodies must revolve; and that, whatever may be the case in other countries, yet in this there can be no doubt, that every act of the Legislature repugnant to the Constitution is null and void."

This principle has been upheld in every decision since that time. In *Greer* v. *Merchants & Mechanics Bank,* 114 Ark. 212, the court had under consideration article 19, section 9, of the Constitution prohibiting the creation of permanent State offices not expressly provided for by the Constitution; and held that it did not apply to the act creating the State Bank Department. The court said:

"We attach little, if any, importance to the provisions of the statute limiting the time to twelve years, for we think that the Legislature has the power to determine whether an office to be created is permanent or temporary, whether expressly declared in the act or not. If it is created as a temporary office, we must assume that the Legislature found it to be such. The creation of the office implies a determination that it is temporary, and not permanent."

In concluding this branch of the discussion, the court said:

"We are of the opinion, therefore, that this provision of the Constitution, when rightly interpreted, constitutes a command to the Legislature, with authority to determine when temporary offices are needed, and that the determination of that question by the Legislature will be observed by the courts. It would be an usurpation of power by the courts to assume authority which had been delegated to the Legislature itself."

If the section of the Constitution as declared by the court in the language just quoted constitutes a command to the Legislature, it is plain that the section is mandatory and not merely directory. If the section is mandatory, it is equally clear that the Legislature could not create a permanent office in contravention of its provisions. Therefore it is manifest from the language used that the court upheld the statute on the ground and the Legislature regarded the State Bank Department as a temporary office, and that its decision was conclusive on the courts. The practical effect of the majority opin-

ion in the case at bar is that a constitutional office may be abolished and that its duties, although specifically defined by the clause of the Constitution providing for the creation of the office, may be attached to a temporary office. Such is not the law.

"Section 10, article 27, of the Constitution is amended by what is known as Amendment No. 4 to read as follows:

"The General Assembly shall pass laws to correct abuses and prevent unjust discrimination and excessive charges by railroads, canals and turnpike companies for transporting freight and passengers, and shall provide for enforcing such laws by adequate penalties and forfeitures, and shall provide for the creation of such offices and commissions and vest in them such authority as shall be necessary to carry into effect the powers hereby conferred."

The amendment consists in adding the words, "and shall provide for the creation of such offices and commissions and vest in them such authority as shall be necessary to carry into effect the powers hereby conferred."

Pursuant to this amendment the Legislature of 1899 created the Railroad Commission of Arkansas, and defined its duties in accordance with the mandate of the Constitution. Three members were provided for and the office was made elective.

The Legislature of 1919 created the Arkansas Corporation Commission. Section 1 provides that it is created for thirty years, and that it shall consist of three members, who shall be elected by the people. The act gives the commission jurisdiction to regulate the rates of all public utilities in the State. Section 31 provides in express terms that the present Railroad Commission shall be abolished, and that the Corporation Commission shall exercise all the powers and duties possessed by the Railroad Commission. In short, the Legislature expressly abolished the Railroad Commission and trans-

ferred its duties to the Corporation Commission which the Legislature expressly declares is created for thirty years; and which, as we have already seen, must, according to the previous decisions of this court, be a temporary office.

It will be observed that it is the amendment to the Constitution which commands the Legislature to provide for an office or commission to carry into effect the powers conferred in the amendment, and these powers are enumerated. The Legislature could give the office a different name and vary the duties as by increasing or lessening the penalties, but the office itself being expressly provided for in the Constitution, when created, becomes a constitutional office; and its duties, being expressly and specifically provided for in the Constitution itself, can not be enlarged, diminished, or taken away by the Legislature. If this were not so, and the office could be abolished and the duties attached to another office, then the authority of the Constitution would be subject to the authority of the Legislature. The grant of the office is expressly fixed by the Constitution, its duties are specifically prescribed by the Constitution and there is necessarily an implied prohibition against interfering with it in these respects.

The effect of the majority opinion is to change by act of the General Assembly that which is ·ordained by the Constitution. The Legislature must act in subordination to the Constitution; and it does not do so, if it can abolish a constitutional office with defined duties and attach those duties to a temporary office. It would at least be a very vain and idle provision of a Constituttion to secure to the people in mandatory terms an office or commission and to specifically define its duties, and at the same time leave it to the Legislature to abolish the office, or to attach its duties to a statutory office which might be abolished at any time. Such an intention should not be ascribed to the people in adopting the amendment in question. In short, when the Constitu-

tion expressly provides for an office and in specific terms defines its powers and duties, the Legislature is powerless to abolish, modify, enlarge, or diminish that which is established by the paramount law of the land.

In recognition of this principle, in *State* v. *Askew,* 48 Ark. 82, the court held that the Legislature was powerless to enlarge or abridge the constitutional term of an office and that any attempt to do so would be a plain usurpation. The principle was also recognized in *Falconer* v. *Shores,* 37 Ark. 386, where the court held that the office of collector of taxes was under legislative control because the Constitution provided that the sheriff should be collector of taxes until otherwise provided by law.

In the *Board of Equalization Cases,* 49 Ark. 518, the court said that the office of assessor was a constitutional office and that the Legislature could not abolish or make it a sinecure, for that would make the selection of the officer—a right guaranteed to the electors—an empty form. It was further held that the duties of the office might be varied by the Legislature because the Constitution creating the office provided that he might discharge "such duties as are now or may be prescribed by law."

Again in *Hutton, Collector,* v. *King,* 134 Ark. 463, an assessment statute which provided for two taxpayers to assist the assessor in mak'ng assessments was sustained on the theory that the act allowed the assessor to participate in making the primary assessment, and that because the provision of .the Constitution providing for the office of assessor did not define its duties, but left it to the Legislature to define them, the act was not unconstitutional. Judge WOOD and the writer dissented in that case on the ground that the office of assessor existed and its duties were well known at the time of the adoption of the Constitution and that the framers of that instrument evidently intended that the assessor should make the primary or original assessment. We

recognized the principle laid down in *Hutton, Collector,* v. *King, supra,* that unless the Constitution otherwise expressly provides, the Legislature has power to increase or vary the duties of an office; but when the Constitution defines in specific terms the duties of an office, it has spoken, and to allow the Legislature to change or vary those duties would be to make the creator yield to its creature.

It is equally well settled that every constitutional officer derives his power from the Constitution, and that where the Constitution specifically defines his powers and duties, it is not within the power of the Legislature to change or add to them unless the power to do so is expressly or by necessary implication conferred by the Constitution itself.  Cooley on Constitutional Limitaton (7 Ed.), p. 98, and *State* v. *Douglass,* 82 Nev. 92.

The result of our views is that the Legislature under the authority of *Greer* v. *Merchants & Mechanics Bank, supra,* might have created the Arkansas Corporation Commission with power to regulate water, gas, street car and telephone companies and might have transferred to it the duties of any or all of the commissions now constituting a part of the executive department of the State except that of Railroad Commissioners.

In regard to that office, or commission as above stated, it could only change the name and vary the duties within the limits prescribed in the amendment to the Constitution providing for the office; but because the Constitution has specifically defined its duties, the Legislature can not abolish the office, nor add to it other duties than the power to carry into effect the laws passed to correct abuses and prevent unjust discrimination and excessive charges by railroads, canals and turnpike companies, nor can it abridge the duties of the office or commission in respect to the power ordained by the Constitution.  It is manifest that the only object of specifically defining the duties of an office in a Constitution is to limit or restrict the power of the Legislature

in this respect; otherwise, the amendment might just as well not have been adopted.

It was evidently intended by defining the duties of the office or commission to make them fixed and permanent, and thus to place the subjects to which they relate altogether beyond legislative control. If the Legislature has the power to abolish a constitutional office and add its duties to another office with other and foreign duties, it is evident that the Legislature could take away all or a part of the duties that naturally belong to the office. Under the majority opinion, if the next or any succeeding Legislature should repeal the statute creating the Arkansas Corporation Commission, without reviving by express words the statute creating the Railroad Commission, the latter office or commission would be abolished, although it is a constitutional office with well defined duties. Thus, indeed, by indirection, would the organic law of the land be superseded by the Legislature. It is no answer to this to say that no Legislature will likely do this; for we are dealing with the question of power and not that of the mind or will of the Legislature; and that no man may know.